# PHILADELPHIA AND READING COAL AND IRON COMPANY

*vs.*

## THOMAS S. WILLINGER ET AL.

*Promissory Note—Acceptance of New Note—Effect—Decedent's Estate—Transfer as Security.*

The acceptance of a new note or security, of equal degree, for an existing note, is not in itself a payment or extinguishment of the original debt for which it was taken, in the absence of an agreement to that effect.                                    p. 51

A claim on a note executed by decedent is, as against claims incurred by the administrators in undertaking to continue decedent's business, entitled to priority of payment out of the proceeds of sales of property belonging to decedent in the hands of receivers who were subsequently appointed to liquidate the business and sell decedent's property.                          p. 51

One who made a loan to the estate of decedent, on a promissory note signed by the administrators and by eight of the nine distributees of the estate, receiving as security therefor certificates of corporate stock which had belonged to decedent, with transfers endorsed thereon signed by the "estate of" decedent and the administrators, *held* to be entitled to have eight-ninths interest in such stock applied in payment of the loan.

p. 52

*Decided June 18th, 1920.*

Appeal from the Circuit Court No. 2 of Baltimore City (DOBLER, J.).

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*Ralph Robinson,* for the appellant.

*James R. Brewer, Jr.,* and *Harry N. Baetjer,* with whom were *Venable, Baetjer & Howard* on the brief, for the appellees.

BRISCOE, J., delivered the opinion of the court.

This is an appeal from an order of the Circuit Court No. 2 of Baltimore City, overruling certain exceptions filed by the Philadelphia and Reading Coal and Iron Company to an auditor's report and a distribution account, in the case of the *German Bank of Baltimore* (now National Central Bank) v. *Thomas S. Willinger et al.* (consolidated causes).

The case was before this Court, on a former appeal, *Willinger et als.* v. *The German Bank of Baltimore City et al.,* reported in 132 Md. 237, and the papers in the record on that appeal are made a part of the record in this case.

The appellant is a general creditor of the estate of Louis J. Willinger and excepts to the auditor's distribution account, in so far as it allows to the National Central Bank of Baltimore and to one Bessie Franke a preference in payment of their claims in full as preferred creditors, in the distribution of the estate in the hands of the receivers.

The exceptions, as set out in the record, are as follows:

"First—The auditor has erroneously and unlawfully and to the prejudice of this exceptant allowed a preference upon the claim of the National Central Bank, heretofore known as the German Bank, the plaintiff in this cause, in an amount, together with interest, of $12,975.58.

"Secondly—That the auditor has erroneously and unlawfully, and to the prejudice of this exceptant, allowed a preference upon the claim of Bessie Franke, in the amount of $2,394.00, being the sale price of one hundred and twenty-six shares of stock of Central Fire Insurance Company (otherwise known as German Fire Insurance Company)."

Mr. Willinger died in July, 1912, and letters of administration on his estate were granted to two of his children, Thomas S. Willinger and Teresa Willinger, who qualified as such administrators.

The decedent was indebted to the German Bank of Baltimore, now the National Central Bank of Baltimore, at the time of his death, in the sum of nineteen thousand and five hundred dollars, on which indebtedness there was paid by the administrators the sum of $5,000, leaving due $14,500.00, evidenced by three promissory notes, as follows: one dated April 12, 1912, for $5,000, one dated May 12, 1912, for $6,500, and the other note dated May 21, 1912, for $3,000. There was paid on this indebtedness the sum of $3,500, leaving due thereon, after crediting all payments made on account, the sum of $11,000, with interest thereon, making a total of principal and interest of $12,975.58.

The National Central Bank was allowed this claim by the auditor, as a preferred claim, due by the estate of Louis J. Willinger at the time of his death, which is represented by the three notes of May 9, 1912, May 21, 1912 and April 12, 1912, in the distribution account.

It appears that Louis J. Willinger at the time of his death was engaged in the retail and wholesale coal and wood business, and left a large and valuable estate of real and personal property. By an agreement between the family, the business was continued and conducted by the son, Thomas S. Willinger, and a daughter, Teresa M. Willinger, for the benefit of those concerned, until the 22nd of December, 1916, when upon petition the Circuit Court of Baltimore City assumed jurisdiction of the administration of the estate. By the decree the administrators *c. t. a.* were authorized to continue the business for the period of thirty (30) days.

It further appears that, not being successful in the conduct of the business, receivers were subsequently, on the 25th day of January, 1917, appointed to wind up and liquidate the business and also to sell the real and personal property left

by Louis J. Willinger at the time of his death, together with all accretions and additions thereto and to take charge, administer and sell the same, under the jurisdiction of the court.

It also appears, as heretofore stated, that in the course of the administration of the estate by the receivers the auditor allowed $11,000 of the claim of the National Central Bank of Baltimore, with interest thereon, as a preferred claim, payable in full, as represented by the three notes, and also the additional sum of $5,750.00 of the bank's claim, as a general creditor, representing loans made by the bank to the administrators of the estate.

The contention upon the part of the appellant is, that the indebtedness due to the bank on account of the three notes made by the decedent was wholly paid and discharged by the renewal of the notes by the administrators and the acceptance by the bank of new notes, for a like amount, signed Estate of Louis J. Willinger, Thomas S. Willinger and Teresa M. Willinger, and that the auditor was in error in allowing the claim of the bank as a preference to the extent of $11,000, with interest on each note.

We cannot agree to this contention, under the facts of this case.

It appears from the uncontradicted evidence before the auditor that, while the original notes were renewed by the administrators, they were never cancelled or surrendered by the bank, but remained in the hands of the bank, and the acceptance of the new renewal notes were not intended as an extinguishment or payment of the original debt, secured by the three notes.

The witness Thomas S. Willinger testified before the auditor as follows: "Q. At that time, whomever you dealt with, isn't it a fact that they insisted on retaining your father's original notes when you renewed them? A. Well, I renewed the original notes. I never received them. Q. You never did get those notes back? A. No. Q. Although

you did give your personal notes for them? A. Yes. Q.
They kept those notes? A. Yes. Q. Any subsequent re-
newals they always gave you back your previous renewal.
notes? A. Yes, sir. Q. But never did give you back the
originals? A. Never gave me back my father's original
paper. Q. (By Mr. Benzinger): Did you ever ask them for
them? A. Well, they never gave them. I think on one oc-
casion Mr. Caton came down there and I was looking at the
note, and he grabbed that note so quick I did not know what
had happened. Q. When was that? A. I really never knew
why they retained the notes. Q. You never heard? A. No,
I never heard. I often thought of it, but I never knew the
reason why they retained them. Q. They never made any
explanation to you why they retained them? A. No."

George F. Lang, the cashier of the bank, testified that the
renewals were authorized by the bank, and stated that all
matters of renewals of notes are taken before the board of
directors of the bank, and stated that "We had the Willinger
notes as past due paper. Our board authorized us to renew
these notes, but always be sure to retain Mr. Louis J. Wil-
linger's notes, not to accept the administrators' notes, as we
were only extending the L. J. Willinger's note through ac-
cepting the administrators' notes and attaching Louis J.
Willinger's notes to those which we carried out," and that
he made this statement to Thomas S. Willinger at the time
of the renewal of the notes; that the notes were renewed
upon this condition and the renewal notes were attached to
the original notes at the time of their renewal. He further
testified that the three original notes were retained by the
bank, up to the time they were filed in this case as preferred
claims. They were not surrendered when a renewal was
made. In answer to the question, "How would you mark
them on your ledger when a renewal note was made?" "We
never marked these notes of L. J. Willinger paid. We kept
those open. The only thing we marked paid on our books
was when the administrators would come in and renew the

administrators' notes from time to time, but we kept those others open on our ledger."

The decisions in this State and in other jurisdictions are uniform in holding that the acceptance of a new note or security, of equal degree, for an existing note, is not in itself a payment or extinguishment of the original debt for which it was taken, in the absence of an agreement to that effect. *Ecker* v. *First Nat. Bank,* 59 Md. 291; *Owen* v. *Hall,* 70 Md. 97; *Williams* v. *Bank,* 72 Md. 441; *District Nat. Bank* v. *Mordecai,* 133 Md. 419; *Councilman* v. *Towson Bank,* 103 Md. 477.

In 20 *Ruling Case Law,* 366, it is said: "In order to effect a novation, there must be a clear, definite intention on the part of all concerned that such is the purpose of the agreement, for it is a well-settled principle that novation is never to be presumed. The intention of the obligor that the existing debt should be discharged by the new obligation must be concurred in by both debtor and creditor. The point in every case then is, did the parties intend by their arrangement to extinguish the old debt or obligation and rely entirely on the new, or did they intend to keep the old alive and merely accept the new as further security, and this question of intention must be decided from all the circumstances." 29 *Cyc.* 1140; *U. S.* v. *Grover,* 227 Fed. 181; 8 *Corpus Juris,* 569.

Under the state of facts disclosed by the record in this case, and under the authorities cited, we think the bank's claim of $11,000 should be paid in full, and the auditor was clearly right in allowing it among the preferred claims, in the distribution of the funds of the estate. The money in the hands of the receivers was derived from the sale of the assets belonging to the deceased, and the bank was a creditor prior to the appointment of the receivers, and was entitled to have its claim settled as a preferred claim out of the proceeds of such sales. *Diamond Match Co.* v. *Taylor,* 83 Md. 394; *Willinger* v. *German Bank of Balto.,* 132 Md. 240;

*Schouler on Wills, etc.,* Vol. 2, p. 1510; *Glenn* v. *Burrows,* 37 Hun. 602; *Pollak Bros.* v. *Niall-Herin Co.,* 137 Ga. 23.

The claim of Bessie Franke, which was allowed as a preferred claim to the extent of an eight-ninth interest in the shares of stock assigned as collateral security, rests upon an entirely different rule and principle of law. The testimony shows that, on the 28th of December, 1915, Mrs. Franke loaned to the estate of Louis J. Willinger the sum of $5,000 on a promissory note signed by the administrators *c. t. a.* and eight of the nine children of Louis J. Willinger, deceased, and payable six months after date. This note was not paid at maturity but a renewal note was executed by the same parties, dated the 28th of June, 1916, for the sum of $5,000, payable six months after date to Mrs. Bessie Franke. At the time of the execution and delivery of this note, there was assigned and transferred to her one hundred and twenty-six shares of the stock of the Central Fire Insurance Company, formerly the German Fire Insurance Company, as collateral security for the loan. This stock was delivered to her on the 28th of June, 1916, and endorsed as follows: "For value received we hereby sell, transfer and assign one hundred and ten, twelve and four shares, respectively, of the within stock and certificates to Mrs. Bessie Franke," signed "Estate of L. J. Willinger, Thomas S. Willinger, Theresa M. Willinger, Admrs. *c. t. a.,*" and dated June 28, 1916.

The auditor held that an eight-ninths interest in this stock passed to Bessie Franke as collateral for her loan, and he allowed, in the distribution account, eight-ninths of the net proceeds of the sale of the one hundred and twenty-six shares of this stock, by virtue of the assignment of the stock.

We think this allowance and provision of the audit is correct. The debts of the decedent had been fully paid out of the assets of the estate, as provided by the audit, and the assignors of the stock, being the equitable owners, had a right to assign it as collateral security for the loan. The proceeds of the stock was applicable to its payment, to the extent of

the eight-ninths interest of the adult equitable owners' interest therein. The proof shows that Bessie M. Franke lent to the Willinger heirs, with the exception of the infant Giles G. Willinger, the sum of $5,000, upon the understanding that she was to receive as collateral therefor the shares of the German Fire Insurance Company, the one hundred and twenty-six shares, represented by the three certificates.

For the reasons stated, the order appealed from will be affirmed.

*Order affirmed, with costs.*