## McRAE GROCERY CO. v. INDEPENDENCE INDEMNITY CO.

## INDEPENDENCE INDEMNITY CO. v. AUSTIN et al.

Circuit Court of Appeals, Fourth Circuit.
July 1, 1929.

No. 2794.

James S. Manning, of Raleigh, N. C., and Murdock M. Johnson, of Aberdeen, N. C. (Johnson & Johnson, of Aberdeen, N. C., and Manning & Manning, of Raleigh, N. C., on the brief), for appellant.

W. C. McGowan, of Columbia, S. C. (Benet, Shand & McGowan, of Columbia, S. C., on the brief), for appellee.

Before WADDILL and PARKER, Circuit Judges, and SOPER, District Judge.

PARKER, Circuit Judge. This is an appeal by the McRae Grocery Company from the decree rendered in a suit brought by the Independence Indemnity Company against H. M. Austin and others to ascertain its liability under certain contractor's bonds which it had executed. Austin had entered into a contract with the South Carolina highway

commission for the construction of a highway, and the indemnity company had executed a bond as his surety that he would perform the contract and pay for labor and materials which might be furnished him in connection therewith. H. S. Green had taken over a part of the project as subcontractor, and the indemnity company had executed a similar bond as surety for him. The McRae Grocery Company intervened in the suit of the indemnity company, and filed claim for supplies furnished Austin and Green and one Bennett, another subcontractor. The court below found against all of these claims, and the grocery company has appealed.

■ Little need be said as to the Austin and Bennett claims. The court below found, and the finding is supported by the evidence, that the accounts of the grocery company against them, with the exception of undisputed items against Austin amounting to $179.46, were assigned to one R. R. Ingram in exchange for a $2,500 note and mortgage of Green. This being true, the grocery company has parted with these accounts and cannot recover on them from the indemnity company. And it cannot affect the matter that the note and mortgage obtained in exchange have proven to be of little value; for the trade with Ingram has not been rescinded and he has not been made a party to this suit. The grocery company contends that a fraud was perpetrated upon it in the exchange; but fraud would render the transaction not void, but merely voidable, and it would be upheld until avoided on that ground. Furthermore, if the matter were properly before us, there is no sufficient evidence of fraud in the record to justify setting aside the transaction on that ground.

■ With respect to the account against Green, however, a different situation exists. This account, with the exception of items aggregating $855.39, represents supplies furnished to enable him to carry on the work under his contract. These supplies have not been paid for, and they come clearly within the terms of the bond. The contention is made that the account has been settled by the taking of notes and mortgages executed by Green; but the grocery company contends that these were taken as collateral security to the account, and Green testifies that it took them in advance of letting him have the merchandise. The property embraced in the mortgages was covered by prior incumbrances, and upon foreclosure only $86.43 was realized for application on the claim of the grocery company.

The question which arises is whether the grocery company is precluded from recovering on the bond executed by the indemnity company, because it required Green to execute the notes and mortgages to which we have referred. We think not. The company was liable under its bond for supplies furnished Green, and this liability was not discharged by reason of his executing notes for the account. United States Fidelity & Guaranty Co. v. Golden Pressed & Fire Brick Co., 191 U. S. 416, 24 S. Ct. 142, 48 L. Ed. 242; Maryland Casualty Co. v. Ohio River Gravel Co. (C. C. A. 4th) 20 F.(2d) 514, 517. The fact that the grocery company required that the notes and mortgages be executed in advance of the furnishing of the supplies shows that they were taken as security and not as payment, and it is well settled that a surety is not discharged because the creditor exacts collateral security of the principal. 21 R. C. L. 1053; United States F. & G. Co. v. Eichel (C. C. A. 3d) 219 F. 803.

■ But, even if the notes and mortgages be considered as having been given in settlement of the account for supplies, we do not think that this precludes the grocery company from recovering on the bond. If the contractor had given a check in payment of the account which was subsequently dishonored, no one would contend that the acceptance thereof operated as final payment of the debt or discharged the indemnity company from liability for the account; for, in the absence of special agreement that a negotiable instrument should be accepted in absolute payment or discharge of a debt, the presumption is that it was accepted on condition that it should itself be paid. Philadelphia Life Ins. Co. v. Hayworth (C. C. A. 4th) 296 F. 339; Little v. Mangum (C. C. A. 4th) 17 F.(2d) 44. And this rule applies to a promissory note as well as to a check. The Kimball, 3 Wall. 37, 18 L. Ed. 50; The Bird of Paradise, 5 Wall. 545, 561, 18 L. Ed. 662; A. Leschen & Sons Rope Co. v. Mayflower Gold Mining & Reduction Co. (C. C. A. 8th) 173 F. 855, 35 L. R. A. (N. S.) 1. The rule is thus clearly stated by Judge Sanborn in the case last cited:

"A clear agreement by the creditor that he will take the risk of the payment of the note and that the debt is discharged thereby, or the indubitable intention of both the parties to that effect, is requisite to extinguish a debt by the taking of the debtor's note. An agreement that a debt shall be paid, or shall be payable, or that it has been paid by the note of the debtor, is a contract for an extension of the time of payment, and that the debt shall be paid, or that it has been paid, by the

496

note of the debtor on condition that the note is paid, but not otherwise. * * * Where the extinguishment of a debt has the effect to strike down a lien or a title securing its payment, the presumption that it is not discharged by the acceptance of the note of the debtor in payment of it is strengthened, because in such a case the discharge of a lien is more unusual and unreasonable."

■ There is no such proof in this case as would warrant the holding that it was the intention of the parties that the notes and mortgages of Green should be taken in unconditional payment and discharge of the liability for supplies furnished; on the contrary, the reasonable inference from the evidence is that they were taken merely as collateral security, and certainly, upon their being dishonored, there is no reason in law or equity why the grocery company should not recover on the account. Much has been said in the briefs as to the bid made by M. W. McRae, one of the officers of the grocery company, at the mortgage foreclosure sale; but we fail to see how this has any bearing upon the question before us. If McRae failed to comply with his bid, he incurred a liability which the state court can enforce; but this has nothing to do with the right of the corporation to recover on the bond of the contractor.

Our conclusion is that the decree appealed from should be affirmed, except in so far as it relates to the account against Green, and that as to this matter it should be reversed, and decree should be entered for the grocery company for the amount of this account, less the items thereof aggregating $855.39, which, we agree with the special master, were not covered by the bond.

Affirmed in part, reversed in part, and remanded.