## LASSITER v. POWELL et al.

### No. 5626.

Circuit Court of Appeals, Fourth Circuit.

Nov. 5, 1947.

---

[6] Note 2, supra.

Murray Allen, of Raleigh, N. C. (W. M. Hicks, of Oxford, N. C., on the brief), for appellant.

B. S. Royster, Jr., of Oxford, N. C. (Clyde A. Douglass, of Raleigh, N. C., on the brief), for appellees.

Before PARKER, SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

This is a suit in equity on two lost notes executed by Robert G. Lassiter, the defendant, and payable to the National Bank of Granville. One note was dated November 25, 1932, for $15,500, and was payable in 90 days; the other was dated February 11, 1933, for $1,000, and was payable in 60 days. The plaintiffs are the trustees for the creditors and stockholders of the

First National Bank of Granville. The District Court entered judgment for the plaintiffs for the face value of the notes with interest, but conditioned execution upon the giving of a bond by the plaintiffs for $60,000 to indemnify and save harmless the defendant from any liability that might be asserted against him on the two notes in suit, and also on another note to be discussed hereinafter. The defendant appeals.

The principal contention advanced by the defendant is that the two notes in suit were discharged by a subsequent note signed by him and accepted by the plaintiffs in full settlement of the notes in suit and of certain other negotiable paper not involved in this suit. The notes in suit were payable to the National Bank of Granville, but they were acquired prior to March 5, 1933, by the First National Bank of Granville which was formed by a merger of the National Bank of Granville with the First National Bank of Oxford. The notes and at least one other note were secured by a bond of the Consolidated Indemnity & Insurance Company in the amount of $17,500.

On March 5, 1933, the First National Bank of Granville was closed and ordered to suspend operations by proclamation of the President of the United States, and J. W. Medford was appointed Conservator of its assets by the Comptroller of the Currency. When Medford took over the First National Bank, the two notes in suit did not come into his possession since they had previously been pledged by the bank to the Reconstruction Finance Corporation.

On August 30, 1933, the defendant addressed a letter to the First National Bank, attention J. W. Medford, Conservator. The letter set forth that the First National Bank held three notes of the defendant, including the two notes in suit, aggregating $17,000. It also stated that the bank held a note of the defendant for $4,200 which had been given in renewal of two notes originally payable to W. Z. Mitchell; that the defendant understood he was not liable on this note; and further that he was entitled to a credit of $1,660 which had been paid by him on this latter obligation. Enclosed was a note signed by the defendant, dated August 21, 1933, and payable to the First National Bank one year after date

for $15,500. It was offered by the defendant in full settlement of all the notes held by the bank referred to in the letter, including the two notes in suit. The note, referred to herein for convenience as the compromise note, was accompanied by a bond executed by the Consolidated Indemnity & Insurance Company for the same amount, the bond reciting that the defendant's indebtedness to the First National Bank had been reduced to $15,500. The letter, note and bond were received by Medford and retained by him, but at no time did he indicate his acceptance of the defendant's offer. On December 19, 1933, an agreement was executed between the First National Bank, the Oxford National Bank, and the plaintiffs. The agreement recited that the First National Bank had been restored to solvency, and that pursuant to a plan of reorganization approved by the Comptroller of the Currency, the assets of the First National Bank were to be conveyed to the Oxford National Bank, with the exception of certain non-liquid and depreciated assets listed in an attached schedule, which were to be transferred to the plaintiffs as liquidating trustees of the First National Bank. Included in the items conveyed to the plaintiffs were the two notes in suit, as well as the other notes of the defendant referred to in his letter of August 30, 1933, but the schedule made no reference to the compromise note of August 21, 1933. It has been suggested that through these transactions the compromise note became the property of the Oxford National Bank because the note was not listed amongst the excepted assets to be transferred to the plaintiffs, but this is obviously incorrect. Although the compromise note was not in the schedule of assets transferred to the plaintiffs, it was nevertheless delivered to them with the defendant's letter of August 30, 1933, and with the bond mentioned therein, along with the other questionable assets of the First National Bank. Moreover, it is conceded that the compromise note did not create a new obligation but related to the same indebtedness as that covered by the notes in suit, and consequently it is inconceivable that it was the intention of the parties under the agreement of December

19, 1933, that the compromise note should be transferred to the Oxford National Bank, while the notes in suit should be transferred to the plaintiffs, as liquidating trustees. The failure to list the compromise note, together with the notes in suit, amongst the assets transferred to the plaintiffs may have been due to the fact that the notes in suit were not actually in the possession of the parties at the time but were in the possession of the Reconstruction Finance Corporation as collateral security and were not actually received by the plaintiffs until September, 1934.

The notes in suit and the compromise note were retained by the plaintiffs until February 8, 1937, but, except for this retention, the plaintiffs did not at any time during this interval by word or deed indicate to the defendant their acceptance of the offer of compromise contained in his letter of August 30. At no time did the plaintiffs request payment of the compromise note; nor did the defendant at any time make demand for the return of the notes in suit.

Some time in 1934, the Consolidated Indemnity & Insurance Company was forced into liquidation, and the Superintendent of Insurance of the State of New York was designated the Liquidator of Consolidated. The plaintiffs held the bonds of Consolidated securing the notes in suit, the compromise note, and the other instruments and as the notes in suit had not been paid, the plaintiffs filed a claim against Consolidated to recover on the bond which secured them. After some preliminary negotiations, the plaintiffs executed an assignment of the notes in suit and the compromise note to the Liquidator of Consolidated, and the latter agreed to recommend to the referee that 50 per cent. of the plaintiffs' claim be allowed, i. e., $8,250. The plaintiff's claim for $16,500 was based entirely on the two notes in suit and not on the compromise note. The compromise note was assigned to the Liquidator because of his insistence that all three notes be conveyed to him; but it is quite evident that the plaintiffs and the Liquidator treated the compromise note of August 21, 1933, for $15,500 as a renewal of the note of November 25, 1932, for like amount, because the compromise note was so described in correspondence between the parties and in the presentation of the plaintiffs' claim to the Liquidator. The claim upon the Liquidator was made at the request and for the benefit of Lassiter, who told the plaintiffs that sufficient assets to liquidate the notes had been pledged with the Indemnity Company.

Pursuant to the agreement between the plaintiffs and the Liquidator, the referee allowed the plaintiffs $8,250, that is, 50 per cent. of the plaintiffs' claim on the two notes aggregating $16,500. The plaintiffs, however, received dividends on this claim in the amount of only $495, between the date of the allowance of the claim and April 11, 1944. Consequently, the plaintiffs were dissatisfied and, taking advantage of a provision in the agreement between them and the Liquidator, they returned the dividends to him and demanded that the notes be reassigned to them. It then transpired that the notes in suit and the compromise note were lost despite a careful search to find them, and accordingly on April 11, 1944, the Liquidator executed an assignment of all of his rights in the notes to the plaintiffs. The bonds of the Consolidated were returned to the plaintiffs at the same time. On March 10, 1945, this suit was instituted after several ineffectual demands had been made upon the defendant for payment.

The principal defense in the pending case is that the plaintiffs accepted the compromise note in full payment of all indebtedness and are therefore precluded from recovering on the notes in suit. The defendant does not deny that he is indebted to the plaintiffs in the sum of $15,500; indeed his letter of August 21, 1933, while questioning his liability on other obligations, admits an indebtedness of this amount. He points out, however, that the compromise note was not in fact offered as a renewal but in full payment of all prior obligations, and he contends that the plaintiffs accepted it as such and hence must be denied recovery in this case under the rule established in North Carolina that one who accepts part payment in satisfaction of a debt cannot afterward recover any part of the original indebtedness. One may not

obtain the benefits of a transaction of settlement and at the same time repudiate the conditions attached to it. Southwest Nat. Bank v. Justice, 157 N.C. 373, 72 S.E. 1016; Aydlett v. Brown, 153 N.C. 334, 69 S.E. 243; Armstrong v. Lonon, 149 N.C. 434, 63 S.E. 101. The defendant's contention is twofold: (1) that the retention of the compromise note first by Medford and later by plaintiffs, with knowledge of the conditions upon which it was offered, constitutes acceptance; and (2) that the assignment of the note by the plaintiffs to the Liquidator of the Consolidated Indemnity & Insurance Company in 1937 was such an acceptance.

■ It is axiomatic that neither the Conservator of the insolvent bank nor the plaintiffs were under any duty to give their acceptance to the compromise, and that the burden is on the defendant to establish it. Swan v. Carawan, 168 N.C. 472, 84 S.E. 699; F. S. Royster Guano Co. v. Marks, 135 N.C. 59, 47 S.E. 127. The defendant offered some evidence that negotiations with regard to the matter took place between him and Medford prior to August 30, 1933, but since the letter of that date was obviously an offer, it is clear that there was no acceptance prior thereto. Moreover, there is no evidence that Medford or anybody in authority made any reply to the letter of August 30, or accepted the proposition either orally or in writing. There was merely the retention of the note and the letter. Indeed Medford had no authority to accept the compromise since his powers under the statute were identical with those of the receiver of an insolvent national bank who has no authority to sell or compound bad or doubtful debts without first having secured an order from a court of competent jurisdiction. See 12 U.S.C.A. §§ 192, 203. No such order was ever obtained by Medford in this case. It should be added that the notes in suit had been pledged to the Reconstruction Finance Corporation as security, and remained in its possession until September, 1934, and that no effort was made at any time to secure the assent of the Corporation to the acceptance of the defendant's compromise offer.

■■ We agree with the view of the District Court that the conduct of Medford in dealing with the compromise note and his failure to notify the defendant that the offer was not accepted does not constitute acceptance of the notes so as to bar recovery in this suit; and the same conclusion must be reached with respect to the conduct of the plaintiff trustees who succeeded Medford in the control of the notes in question. The mere fact that along with many other papers relating to questionable assets of the bank, the documents in question were received and filed without comment or reply by officials charged with the conservation of its assets cannot be regarded as an acceptance of the defendant's offer. On the contrary, the inclusion of the notes in suit in the list of assets turned over to the plaintiffs, and the omission therefrom of the compromise note, tends strongly to show that the plaintiffs had not accepted the latter in place of the former.

■ We come then to consider the second ground for the defendant's contention, namely, that the assignment of the compromise note along with the notes in suit to the Liquidator of the Indemnity Company in the presentation of the plaintiffs' claim on the bond of the Indemnity Company constituted an acceptance of the compromise note. We do not think that the circumstances surrounding the transaction show either that the plaintiffs accepted the note or that the defendant was induced to believe that such was the case or that he was injured in any way by that which took place. It must be kept in mind that the claim against the Indemnity Company was based on the notes in suit and not on the compromise note, and that although the latter was also listed in the assignment as the property of the plaintiffs, it was treated by the parties as a renewal note and was included in the assignment only because the Liquidator desired that all papers relating to the claim be placed in his hands. Neither party treated the note as if it had been accepted in payment of the notes in suit, but proceeded as if the latter were in full force and effect; and they would have been justified in so doing under the law of North Carolina if in fact the so-called compromise note had been a renewal note which the maker failed to pay upon matu-

rity. Dyer v. Bray, 208 N.C. 248, 180 S.E. 83; First Nat. Bank v. Hall, 174 N.C. 477, 93 S.E. 981; Delafield v. Construction Co., 118 N.C. 105, 24 S.E. 10; Bank of New Hanover v. Bridgers, 98 N.C. 67, 3 S.E. 826, 2 Am.St.Rep. 317. When we also remember that the claim was presented at the request of the defendant, but subsequently withdrawn, and that no claim by the plaintiffs and no payment by the defendant have ever been made upon the compromise note, nothing remains to support the theory that the plaintiffs accepted the benefits of a transaction of settlement but refused to abide by the conditions thereof.

■■ Since the plaintiffs did not accept the offer of compromise, we are of the opinion that their retention of the compromise note can have no greater significance than if the note had been taken as conditional payment of the original notes. Indeed the ordinary inference to be drawn when a note is offered in payment of notes previously given is that the note is offered only as conditional payment, unless the evidence clearly requires the opposite conclusion that it was offered as absolute payment. Segrist v. Crabtree, 131 U.S. 287, 9 S.Ct. 687, 33 L.Ed. 125; McRae Grocery Co. v. Independent Indemnity Co., 4 Cir., 33 F.2d 494, 66 A.L.R. 338; 6 Williston on Contracts, Rev.Ed.1938, § 1875F; see Delafield v. Construction Co., 118 N.C. 105, 24 S.E. 10. In such a situation, it is required in North Carolina that the payee of the note given in conditional payment may not sue upon the original notes until the conditional note has been dishonored, but thereafter suit may be brought on the original indebtedness as if the later note had not been given. Bank of New Hanover v. Bridgers, 98 N.C. 67, 3 S.E. 826, 2 Am.St. Rep. 317. In the present case, the compromise note was not paid by the defendant at maturity, and while no demand for payment was ever made, presentment of the note is not necessary in order to hold the person primarily liable. Gen.Stat. N. C. § 25-76. Where suit is brought on the original indebtedness, normally the plaintiff must surrender the note offered in conditional payment, as otherwise there would be a risk that the defendant might become liable on the note to a possible transferee, and also there would be a possibility that the plaintiff would be paid twice if he had discounted or negotiated the conditional note. 6 Williston on Contracts, Rev.Ed.1938, § 1875H. But the evidence in the case at bar disclosed that the compromise note was lost and not negotiated by the plaintiffs, and that they never received any payment on it. Even if the note should turn up in the hands of a third party without notice, the defendant is protected by the terms of the judgment below which requires as a condition precedent to its execution that plaintiffs furnish bond in the amount of $60,000, to indemnify the defendant against liability not only on the notes in suit but also on the compromise note.

The defendant makes the additional point that he signed the notes as accommodation maker for Robert G. Lassiter & Company, of which he was the president and principal stockholder, and that the obligation of that company to the plaintiffs was discharged in the liquidation of the assets of the company in a suit filed in the United States District Court for the Middle District of North Carolina in 1933 when the company was placed in receivership. Consolidated Indemnity & Insurance Company filed a claim for $15,500 against the company in this suit and the court found that the First National Bank was the real party in interest with respect to the claim. For the purpose of liquidation, the assets of the company were transferred to the Guilford Construction Company in exchange for stock of the latter corporation, which was issued to the creditors of the Lassiter Company at the rate of one share of no par value common stock for each $100 indebtedness, and accordingly, 155 shares of the stock were issued to the plaintiffs as trustees for the First National Bank. The plaintiffs were not parties to this suit and did not participate in the proceedings.

■ The defendant's contention is that the acceptance of the stock by the plaintiffs discharged the obligation of Robert G. Lassiter & Company, and that he is therefore relieved of his liability on the notes in suit as accommodation maker. But it has already been determined both in this court, Guilford Construction Co. v.

Biggs, 4 Cir., 102 F.2d 46, and in the Supreme Court of North Carolina, Biggs v. Lassiter, 220 N.C. 761, 18 S.E.2d 419, that the acceptance of the Guilford stock by the creditors of the Lassiter Company did not discharge the obligations of that company. The court below reached the same conclusion in this case. It held that the plaintiff did not accept the stock in payment of the notes but merely as collateral security; and that no dividends had been paid on the stock and that the stock had little or no value at the time of the trial. The evidence supports these findings. Furthermore, the plaintiffs offered in their reply to defendant's answer to transfer the stock to the defendant at a price to be fixed by him, and to credit the price when received upon the notes, but the defendant has not accepted the offer. There is no merit in this line of defense.

Finally, the defendant claims that the doctrine of laches should be invoked to defeat the plaintiffs' claim in this suit. On this question we follow the applicable state law. Guaranty Trust Co. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079, 160 A.L.R. 1231. It is admitted that the statute of limitations has not run since the defendant is a non-resident of the State of North Carolina. See Gen.Stat.N.C. § 1-21. And it is well established in North Carolina that where the statute has not run, equity will not apply the doctrine of laches unless there has been an unreasonable delay prejudicial to the interests of the defendant. Creech v. Creech, 222 N.C. 656, 24 S.E.2d 642; Clark v. Henrietta Mills, 219 N.C. 1, 12 S.E.2d 682; Teachey v. Gurley, 214 N.C. 288, 199 S.E. 83. As was recently stated by the Supreme Court of North Carolina in Creech v. Creech, supra, at page 663 of 222 N.C., at page 647 of 24 S.E.2d: "On the question of laches, the tendency is to measure laches by pertinent statutes of limitations wherever the latter is applicable to the situation and not to regard the delay of the actor to assert the right within that period effective as estoppel, unless upon special intervening facts demanding that exceptional relief."

The defendant has made no showing that he has been substantially prejudiced by the delay of the plaintiffs. He makes the general allegation that the delay has rendered it difficult for him to procure witnesses and marshall evidence in his defense; but he does not show what specific defense he has been deprived of by the delay. Nor has he been injured by the loss of the notes if the loss may be assumed to have been caused by the delay, because he is fully protected by the indemnity bond required of the plaintiffs.

Affirmed.