**MID–EASTERN ELECTRONICS, INC.,**
Appellee,

v.

**FIRST NATIONAL BANK OF SOUTHERN MARYLAND,** Garnishee,
Appellant.

No. 13363.

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 5, 1969.

Decided July 28, 1970.

Richard M. Millman, Washington, D. C., and John C. Eldridge, Annapolis, Md., on brief for appellee.

David F. Albright and Norman P. Ramsey, Semmes, Bowen & Semmes, Baltimore, Md., on brief for appellant.

Before SOBELOFF and CRAVEN, Circuit Judges, and MERHIGE, District Judge.

MERHIGE, District Judge:

This action is before the Court for the second time. It involves a contest between an attaching judgment creditor, Mid-Eastern Electronics, Inc. (hereinafter referred to as the judgment creditor) and a garnishee-bank, First National Bank of Southern Maryland (hereinafter referred to as garnishee). The contest arises over certain assets belonging to Mid-Eastern's judgment-debtor, Continental Electronics, Inc. (hereinafter referred to as the judgment debtor).

On July 14, 1965, the judgment creditor obtained a judgment against the judgment debtor in the District Court for the sum of $30,763.32. In attempting to collect it, the judgment creditor levied upon the chattel assets, including inventory and equipment, of the judgment debtor, and in addition, on January 12, 1966, served a garnishment on the bank. After a plea of *nulla bona*, it later appeared that the bank was asserting a security interest in the debtor's personalty for the payment of certain notes of the debtor held by the bank.

It was stipulated by the parties that the inventory and equipment should be sold by the bank under a sale it had negotiated for $12,000.00. It was further stipulated that the respective rights of the parties should fasten on proceeds resulting from the sale. Subsequent to the sale, the judgment creditor moved for the condemnation of the proceeds realized by the sale which the bank represented to be $4,500.00.

In affirming the judgment of the District Court based on the Maryland Uniform Commercial Code, Md.Code Art. 95B, we held that the garnishee-bank had failed to properly perfect and establish its security interest inasmuch as it could not proffer a security agreement which comported with the requirements of U.C.C. § 9–203(1) (b). Therefore, it

was concluded that the security interest never attached, § 9–204(1), and was rendered unenforceable as against the judgment creditor's lien. Mid-Eastern Electronics, Inc. v. First National Bank of Southern Maryland, 380 F.2d 355 (4th Cir. 1967).

We further remanded to the District Court, based on a motion filed with this Court on April 3, 1967, "for further hearing on the assertion that the Bank concealed additional assets of the judgment debtor and so misled the District Court to pass only upon the $4,500.00 proceeds of the stipulated sale," *id* at 356.

■■ Subsequent to remand, the garnishee filed an amended plea, by leave of Court, stating that it had in its possession a $9,500.00 note from the purchaser of certain inventory and equipment of the debtor, of which $6,275.23 had been paid, but that such note was not consideration for the sale of inventory but represented consideration for personal services to be performed by the chief officer for the debtor. Additionally, the garnishee represented that it had received an assignment from the United States of accounts receivable due the debtor and that the bank had a valid lien in the proceeds thereby received which was claimed to be superior to the plaintiff's attachment. Motions for summary judgment were denied and the case was heard on the merits on May 24, 1968.

Upon the adduced evidence, the District Court was again called upon to decide questions of conflicting claims. In considering the proceeds resulting from the $9,500.00 note received by the garnishee from Service and Maintenance Facilities, Inc., the District Court concluded that from the factual matters presented at the May 24, 1968 hearing, the note represented only a continued payment from the sale of the inventory and equipment. Since the respective claims of the parties had previously been adjudicated by this Court when it considered the dispute over priority claims in the $4,500.00 proceeds, Mid-Eastern Electronics, Inc.

v. First National Bank of Southern Maryland, *supra*, the District Court accordingly held that the judgment creditor was entitled to the proceeds resulting from the $9,500.00 note.

We affirm the result reached by the District Court with respect to the $9,500.00 note. From the facts as presented to the District Court and made a part of the record herein, the factual determination made by that court was certainly not "clearly erroneous" so as to require a reversal of the holding below, based upon such finding. United States v. United States Gypsum Co., 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948); F.R. Civ.P. 52(a). Furthermore, having once made its factual conclusion, and in light of this Court's prior determination in the case, the District Court was quite proper in executing judgment as it did in light of the applicable portions of the Uniform Commercial Code. As stated in Ex parte Sibbald, 12 Pet. 488 (1838), 9 L.Ed. 1167, "Whatever was before the court, and is disposed of, is considered finally settled. The inferior Court is bound by the decree as the law of the case; . . . They cannot vary it, or examine it for any other purpose than execution;" *id* at 492; see also Munro v. Post, 102 F.2d 686 (2d Cir. 1939).

The controversy concerning priorities of the parties in reference to the assignment by the United States to the garnishee presents a more perplexing question for this Court's determination.

During the first part of 1964, the judgment debtor executed five 90-day notes to the garnishee-bank which evidenced an underlying obligation owed to the bank by the judgment debtor. In March and April, 1965, new 90-day notes were issued evidencing this debt. On August 13, 1964, the judgment debtor assigned unto the garnishee-bank "all monies due or which may become due" arising under a contract which was entered into between the judgment debtor and the United States Air Force. On October 1, 1964, the garnishee-bank filed a financing statement purporting to cover such

assignment. The $36,129.95 was received by the garnishee-bank on September 9, 1966, as a result of this assignment, was stipulated to by the parties. Furthermore, the work to be performed for the Air Force under the terms of the contract was completed during the latter part of 1965.

The court below, in rendering judgment for the judgment creditor, held that the garnishee-bank, by issuing new notes to represent the debt as the old notes became due, was, in effect, making future advances to the judgment-debtor which were used to pay off the old notes; and, because the security agreement, pursuant to U.C.C. § 9–204(5), did not represent that the subject matter of the security interest was to secure future advances, further filing of financing statements was required in order to perfect a security interest in the collateral as against future advances. See Coin-O-Matic Service Co. v. Rhode Island Hospital Trust Co., 3 U.C.C.Rept. 1112 D.R.I. 1966), concerning the necessity of the security agreement's evidencing that future advances are to be secured.

The trial court found what it considered to be a "fatal variance" on the face of the financing statement.

Under § 9–403(2), a filed financing statement, which states that the obligation secured is payable on demand, is effective for five years from the date of filing. However, a financing statement filed for a 90-day note is effective only for a period of sixty days after the maturity date of the note. In the event the obligation secured states a maturity date, for example, 90-day notes, a secured party must file a continuation statement within the effective date to maintain perfection in the collateral. Because the obligation owed the garnishee-bank by the judgment debtor was in fact represented by 90-day notes, it was decided that once the original and subsequent notes reached their maturity and new notes were issued, the garnishee had sixty days in which to perfect its lien by filing a continuation statement. The trial court found further that no continuation statement was filed when the notes dated March and April, 1965, were issued. Therefore, the court concluded that garnishee's perfection lapsed and the judgment creditor's lien was superior.

We turn first to the question of whether or not the issuance of the new notes discharged the old and therefore constituted a "future advance."

U.C.C. § 3–601, et seq., enumerates the manners in which an individual may be discharged from liability on a negotiable instrument. The most adhered to inference in the pre-code cases, and the one followed in Maryland, was to the effect that notes given for notes previously held did not extinguish the original liability. Philadelphia and Reading Coal and Iron Co. v. Willinger, 137 Md. 46, 111 A. 132 (1920); see also Lassiter v. Powell, 164 F.2d 186 (4th Cir. 1947). The cases which adhere to such inference, however, acknowledge that a showing of intent by the parties to reach a different conclusion will be treated accordingly by the courts, Philadelphia and Reading Coal and Iron Co. v. Willinger, *supra*, and such intent is to be determined by the facts and circumstances attending the transaction. Bradford v. Harford Bank of Belair, 145 Md. 653, 125 A. 719 (1924). Where the intent of the parties exhibits, therefore, that the issuance of a new note, or notes, is to extinguish the obligation represented in the form of the old notes, such effect will be given. Haggerty v. MacGregor, 9 Mich.App. 671, 158 N.W.2d 33 (1968).

These same inferences were applied in recent cases decided under the Uniform Commercial Code. Commercial Bank of Middlesboro, Ky. v. Carter, 418 F.2d 705 (6th Cir. 1969); In re Rivet, 299 F. Supp. 374 (E.D.Mich.1969); Slaughter v. Philadelphia Nat. Bank, 290 F.Supp. 234 (E.D.Pa.1968). In Safe Deposit Bank & Trust Co. v. Berman, 393 F.2d 401 (1st Cir. 1968), also decided under the Code, the Court disallowed a claim of lien priority, as against an innocent third party, in favor of the appellant-bank where the security agreement represented that the collateral was to secure

a specific note, and the Court found on the fact that subsequent "future advances" were made. The note, representing the obligation purported to be secured, was subsequently paid and new notes issued which increased the debtor's obligation owed to the bank. The new notes recited that the prior security agreement entered into likewise was to secure these notes, but no new security agreements were entered into by the parties which pledged the collateral as security for the later notes. Recognizing the danger of security agreements referring to specific loans and subsequently being converted into security arrangements for future liabilities by extrinsic documents, the First Circuit held that "[I]n a commercial world dependent upon the necessity to rely upon documents meaning what they say, the explicit recitals on forms, without requiring for their correct interpretation other documents not referred to, would seem to be a dominant consideration." 393 F. 2d at 404.

Unlike what transpired in *Berman,* the facts before us most closely present a situation similar to that in *Carter, supra.*

The record indicates that the old notes were returned to the judgment debtor as the new notes were issued, and the judgment-creditor urges that the giving up of the old notes by the garnishee-bank establishes the intent of the parties to have considered the original notes paid. This fact, however, in and of itself, does not necessarily rebut the inference that the original indebtedness has not been extinguished. Hanley v. Bank of America National Trust & Savings Ass'n, 255 Cal. App.2d 439, 63 Cal.Rptr. 161 (1967); Auch v. Andres, 289 Mich. 206, 286 N.W. 214 (1939).

Mr. G. R. Sellner, the Assistant Vice President of the judgment-debtor, testified at deposition as follows, when questioned by Mr. Millman, attorney for the judgment-creditor:

Q. All right, what transaction?

A. When the new note was presented for renewal.

Q. And were two notes in fact renewed, one on June 25, 1964, and one on June 29, 1964?

A. You say they were renewed?

Q. Yes.

A. Yes.

Apparently, the judgment-debtor as well as the garnishee-bank understood, at the time the new notes were issued, that they were to be merely renewals or extensions of the underlying obligation. Also the ledger sheets contained by the garnishee on which the accounts were entered remained constant as to monies owed throughout the renewal transactions. Therefore, and unlike what had transpired in the *Berman* case, no new cash advances were made to the judgment-debtor by the garnishee, but merely the tearing up of one piece of paper and the identical issuance of another in its place.

Further note might be taken of the fact that the judgment-debtor, having renewed his note with the garnishee, never demanded a termination statement from the garnishee which would have the effect of forcing the garnishee to cancel the security agreement if the debt secured was extinguished. U.C.C. § 9–404.

From the foregoing, we must conclude that the intent of the parties was not to extinguish the original obligation but merely to extend the time of payment, or, at the most, substitute the new notes as conditional payment of the old, dependent on the payment of the new notes to extinguish the original obligation. The evidence before us does not require "the opposite conclusion that it was offered as absolute payment." Lassiter v. Powell, 164 F.2d 186, 191 (4th Cir. 1947); see also, McRae Grocery Co. v. Independence Indemnity Co., 33 F.2d 494 (4th Cir. 1929). Consequently, the issuing of new notes was not synonymous with the making of "future advances," § 9–204(5), and the security agreement need not have recited that it covered future advances in order to effectively secure the debt represented by the subsequent notes.

We come now to the question of whether the owed 90-day notes represented as "demand" obligations on the filed financing statement are set out in § 9–402(1). The necessity of stating the maturity date of the obligation secured is not among the enumerated steps required to make sufficient the financing statement. Lincoln Bank & Trust Co. v. Queenan, 344 S.W.2d 383 (Ky.1961).

The scope and purpose of § 9–402 is to put the searcher on notice that an underlying security agreement is outstanding. In re Osborn, 6 U.C.C.Rptr. 227 (W.D.Mich.1969); General Motors Acceptance Corp. v. Terra Contractors Corp., 6 U.C.C.Rptr. 544 (N.Y.Civ.Ct. 1969). The creation of liabilities between the parties is controlled by the underlying security agreement, which a subsequent party will be directed to once having checked the designated place of public recordation and located the filed financing statement. Bank of North America v. Bank of Nutley, 94 N.J. Super. 220, 227 A.2d 535 (1967); Little v. Woodall, 244 Md. 620, 224 A.2d 852 (1966). A properly filed financing statement would thus serve its intended purpose if a subsequent party would have been put on notice of the outstanding security agreement. At that time a third party may locate the underlying security agreement and make a decision most advantageous to himself concerning the collateral which is the substance of the prior security arrangement. The insertion of "demand" would not seriously mislead a later party in his attempt to *locate* the underlying security agreement. See In re Platt, 257 F.Supp. 478 (D.C.Pa.1966); In re Merriman, No. 1155–D (S.D.Ohio, May 2, 1967); U.C.C. § 9–402(5). Indeed, because the garnishee chose to insert the maturity date of the obligation as a "demand" obligation, which apparently is made optional at most by § 9–402(1), a continuation statement was not necessary in order to maintain perfection until five years had elapsed from the date of the initial filing. Thus the garnishee-bank had not vitiated the purpose and intent of § 9–402, but simply prolonged the time in which a continuation statement had to be filed under § 9–403.

Therefore, with respect to the assignment by the United States to the garnishee-bank, we make the following findings: that pursuant to § 9–203 (1) (b), a security agreement was required in order for the security interest to be enforceable, Mid-Eastern Electronics, Inc. v. First National Bank of Southern Maryland, *supra;* M. Rutkin Electronics Supply Co., Inc. v. Burdette Electric, Inc., 98 N.J.Super. 378, 237 A.2d 500 (1967), and the assignment by the debtor to the garnishee-bank of the proceeds due under the Air Force contract, having been signed by the debtor and containing a description of the collateral, constituted the required security agreement, see In re Schreiber, 7 U.C.C. Rep.Serv. 365 (W.D.Wis. Nov. 7, 1969); Citizens & Southern National Bank v. Capital Construction Co., 112 Ga.App. 189, 144 S.E.2d 465 (1965); that having met the requirements of § 9–204(1), the security interest held by the garnishee-bank had attached; that a financing statement, necessitated by § 9–302(1) was properly filed and referenced that which is required by § 9–402(1); that pursuant to § 9–303(1) the security interest was perfected, and inasmuch as the properly filed financing statement charged the judgment-creditor with notice of the outstanding security interest, the garnishee-bank was entitled to priority over the lien held by the judgment-creditor, § 9–301(1) (b).

The garnishee urges a "common law" alternative ground for relief which we need not here decide. Even assuming *arguendo* that the ground was interjected for the Court's review below, which is doubtful from the record, it was not asserted as a ground for relief in reference to the proceeds from the sale of inventory and equipment. Consequently, this Court will not now consider the argument as it applies to the $9,500.00 note, United States v. Bond, 279 F.2d 837 (4th Cir. 1960), cert. den. 364 U.S. 895, 81 S.Ct. 220, 5 L.Ed.2d 189,

and for obvious reasons, we need not decide the question as it may affect the assignment by the United States.

Accordingly, the judgment of the District Court is affirmed in part and reversed in part.