(Decided June 17th, 1896).

---

## DIAMOND MATCH COMPANY AND OTHERS *vs.* WINFIELD J. TAYLOR, RECEIVER.

*Receivers—Distribution of Aseets of an Insolvent Firm Between Composition Creditors of the Firm and Creditors of the Receiver Who Had Continued the Business.*

After the affairs of an insolvent partnership had been put into the hands of a receiver, by whom the business was continued, most of the creditors agreed to accept forty cents on the dollar, payable in notes, the assets to remain in the hands of the receiver as security for the payment. In continuing the business with the sanction of the creditors, the receiver incurred debts for goods purchased from creditors of the firm and also from persons not such creditors. The receiver paid most of the composition notes and also compromised with certain creditors who had attached the individual property of one of the partners at a rate in excess of forty per cent. The business was not profitable, and an order was passed directing it to be closed and the assets distributed. There were three classes of creditors. (1). Those who were creditors of the firm when the receiver was appointed, who accepted the forty per cent. composition, and by whose sanction the business was continued. (2). Those who, being such creditors, sold goods to the receiver and became as to such his creditors. (3). Those who, not being creditors of the firm, became creditors of the receiver by selling him goods. The funds were insufficient for the payment in full of all classes of creditors. *Held,*

1st. That the last-named class of creditors were entitled to be paid in full in preference to the other classes.

2nd. That by the orders of Court authorizing the receiver to continue the business it was not intended that he should purchase goods on credit and sell them, and out of the proceeds of sale pay the firm

creditors in settlement of the composition notes, to the prejudice of persons who, not being creditors of the firm, became creditors of the receiver on account of these purchases.

3rd.  That if the receiver paid to the composition creditors money derived from the sale of new material which should have been paid to the sellers of the same, such composition creditors cannot now contend that the payments to them were wrongful, that the receiver should be personally charged with them and that they are entitled to share equally with those who, not being firm creditors, sold goods to the receiver, because, as respects such new goods, nothing but the profits derived from their sale belonged to the firm creditors.

4th.  That after payment of the persons who sold goods to the receiver those composition creditors who are yet unpaid are entitled to preference.

Appeal from an order of Circuit Court No. 2, of Baltimore City (WICKES, J.), directing " That the case be referred back to the auditor for a restatement of the accounts, under the instructions following : (*a.*) He shall state an account between Winfield J. Taylor, receiver, and the estate of C. W. Lord and Company from the time of the appointment of the said Taylor as sole receiver, down to the time of the appointment of Samuel D. Schmucker as co-receiver ; in this account the said Taylor is to be credited with his disbursements set forth in Accounts Nos. 1 and 2 as filed, except as to item of $16,286.47, paid attaching creditors, and the items of commissions ; and he shall be allowed such portion of said $16,286.47 as shall be equal to 40 per cent. of the claims of said attaching creditors ; and the question whether he shall be allowed the remainder of said $16,286.47 is hereby reserved for further order after the hearing of the above-mentioned petition of said receiver ; and the question as to the allowance of commissions to said receiver is reserved for decision on the final settlement of his accounts when the individual estate of Charles W. Lord is distributed.

(*b.*) The auditor shall distribute the amounts for distribution now in, or hereafter to come to the hands of the joint receivers, including any balance due the estate by W. J. Taylor, sole receiver, under the account to be stated as above directed (not including, however, that portion of said

$16,286.47 reserved for further order, nor the amount of said commissions), in the following order:

1st. To the payment in full of those creditors of W. J. Taylor, sole receiver, who were not, as creditors of C. W. Lord and Company at the time of their failure, parties to the agreement of compromise under which said Taylor carried on the business of C. W. Lord and Company as receiver.

2nd. To the payment of any balance yet remaining due the original creditors of C. W. Lord and Company who agreed to accept, and have not yet received in full, the compromise settlement of 40 per cent. of their claims, so as to give such creditors their full 40 per cent. compromise. Such payments to be equalized as far as possible, if not paid in full.

3rd. To the payment of those creditors of W. J. Taylor, sole receiver, who were also creditors of C. W. Lord and Company, and parties to the agreement of compromise, under which said Taylor, as receiver, carried on the business of said firm."

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, BRISCOE, PAGE, ROBERTS and BOYD, JJ.

*George Whitelock* and *Edgar H. Gans* (with whom was *Joseph C. France* on the brief), for the appellants.

There being before the Court the three classes of creditors above enumerated, with funds insufficient for payment in full, the question arises as to the proper order of distribution. The appellants' claim for goods sold by them to the receiver while conducting business under the Court's order; they were also, but not to so great an extent, original creditors of C. W. Lord & Co., and as such accepted the 40 per cent. settlement notes which have been wholly or for the greater part paid; they contended below, however, that the goods for which they now claim were sold to the Court through its receiver; that the receiver's debts as an expense of the receivership constitute a prior lien on the

funds for distribution ; that the receiver was bound to keep
separate the proceeds of goods bought by him on credit,
and had no right to apply such proceeds to the payment of
settlement notes ; that the receiver should account for and
return all moneys, being proceeds of new goods, which
were diverted to pay the compromise notes of C. W. Lord
& Co., and these appellants consented to treat the payments
thus made to them as first applicable to the goods sold to
the receiver, and thereafter as applicable to the 40 per cent.
compromise of their old debts due by Lord & Co.    As com-
missions are a reward for diligence and fidelity, and the
receiver's conduct in this case has resulted in ruinous loss,
the appellants further contended that the receiver should
refund the sum of $10,200 commissions retained by him,
and they also contended that he should refund the sum of
$4,879, being an amount in excess of the 40 per cent. com-
promise which he paid certain attaching creditors without
any order of Court passed for that purpose.

There is nothing in the petition of November 28th, 1893,
or in the compromise plan therein reported, assuming that
these appellants were parties thereto, to make the claim of
these appellants for goods sold this receiver different from
the claim of any creditor against any receiver for debts con-
tracted by him under the authority of a competent court.
Neither the petition of November 28, 1893, nor the order of
Court thereon, contemplated, nor could it have entered into
the mind of any one to conceive that Taylor would buy new
goods on credit and pay the settlement notes with the pro-
ceeds except in so far as the proceeds were net earnings.
If the order on its face meant this, then it was notice to and
binding on all receiver's creditors new and old ; if on its face
it did not mean this, then it is no estoppel to old creditors
now claiming as creditors of the receiver.    The petition
states in terms that *the assets of Lord & Co.* shall remain in
the receiver's hands as security and payment for the notes,
and the Court's order directs the business to be continued
by the receiver and the settlement notes to be paid " out of

the assets already in hand and hereafter accruing." Surely the proceeds of goods bought on credit by the receiver cannot for such purpose be called " assets in hand or hereafter accruing ;" if so, money borrowed by a receiver would come under the same description. This can only mean that the net profits can be so used. To hold otherwise would be to make the Court a party to the receiver's indirection and improvidence. And foolish seems the argument that when Taylor as receiver applied for a credit of $1,000 to a man who was a settlement creditor at $50, the latter was bound to know and expect that the proceeds of his goods sold the receiver might be diverted to the payment of settlement notes, and he might, as he does under the order appealed from, get nothing, until all other creditors are paid in full, although he trusted the Court's own officer.

Whether or not the proceeds of the individual estate of Chas. W. Lord will be sufficient to reach the claims of these appellants, they do not know, but that question should not influence this appeal, and they respectfully ask for an indication of the views of this Court on the question that the burdensome expenses of tentative distributions by the auditor may be saved, and the knowledge of this Court's opinion may in the future progress of the cause diminish the necessity for litigation between the various classes of creditors. The appellee as receiver has been gulity of gross carelessness or gross ignorance. He should not seek or be allowed to retain a commission equal to nearly 20 per cent. of the *estimated* (not actual) value of the original estate that came into his hands. The letter apparently written to him by his cashier, Smith, alleges the " multifariousness " of the business as his excuse for mixing the accounts, and it is singular that this same " multifariousness " serves the receiver as a reason for not presenting his vouchers to the auditor.

The amounts paid by the receiver, without the Court's warrant or authority, to the attaching creditors should be refunded. These attachments were issued after the execution of Mr. Lord's deed to the appellee in trust for the

benefit of creditors, and after the appellee was appointed
receiver. The Court in fact passed an order as early as
June 6th, 1893, restraining the attaching creditors from in-
terfering with all the assets in the receiver's own hands and
he paid away the funds to the extent of $4,879 in excess
of the 40 per cent. compromise to compound attachments
against Lord's individual estate, in which the creditors of
the firm confessedly had no interest until December, 1894,
and when the creditors' committee showed this estate to be
*possibly* worth $36,000—with debts against it of $27,000.
The appellee did not, in fact, report to the Court that he
had compromised and settled the claims until December,
1894, a short while before adverse proceedings against him
were commenced. With a lengthy petition for rehearing
the appellee files statements of counsel for the attaching
creditors, showing their expectations of success in the at-
tachments. These statements are certainly non-committal
and it is submitted that after the execution of Mr. Lord's
deed of trust to the appellee, nothing intended to be con-
veyed thereby, could be seized by an attaching creditor un-
less the deed was fraudulent.

*Bernard Carter*, for the appellee.

The Court below decided that those who had not dealt
with the firm of Charles W. Lord & Co., but sold goods
to the receiver, should be paid first out of the assets ; then,
that those who had agreed to accept 40 per cent. of the in-
debtedness owing to them when the receiver was appointed
in June, 1893, should be next paid what remained unpaid
of this 40 per cent.; and then those of this class of per-
sons who had also sold goods to the receiver after his ap-
pointment in June, 1893, should be paid what was unpaid
to them on account of the said new indebtedness. Repre-
senting the receiver only, and none of the creditors, it is no
part of my duty, and I have no right to discuss the pro-
priety of this classification except so far as its maintenance
may affect or concern the receiver.

The auditor's account passed under the order appealed from, shows that the funds in hand are sufficient to pay in full all those who, never having been creditors of C. W. Lord & Co., dealt with the receiver. In the instructions given by Mr. France, one of the counsel for the appellants, to the auditor, he was directed to charge the receiver *personally* with all amounts paid by him in payment of the 40 per cent. composition notes, on the ground that the receiver should have first applied any moneys which came into his hands to the payment of goods purchased by him before appropriating any of it to paying the said 40 per cent. notes.

Assuming that this will be the contention in this Court, I proceed to consider it. Now, it will be observed that this contention is made, and *made only by persons* who, being the holders of the 40 per cent. notes, accepted payments from the receiver on account of these notes, which payments they now claim the receiver had no right to make. Therefore, unless the fundamental principles of the doctrine of estoppel are to be disregarded; and, indeed, unless all principles of honest dealing are to be disregarded, this contention must fail. For illustration, let us take the appellant, the Diamond Match Company. It was a creditor of Charles W. Lord & Co., and accepted the 40 per cent. notes, the longest one, running for twelve months, and therefore into 1894. *During all this time*, and afterwards, this same company continued to deal with the receiver, selling him goods *on credit;* while so selling, the receiver, from time to time, applied the money in his hands towards this payment of these notes, in part, and in part to the payment of the new purchases.

In this state of case the said appellant asks that the money thus paid to it should be charged to the receiver, because he wrongly paid it. Certainly, to state such a proposition ought to be a sufficient refutation of it. Now, if it be contended that the receiver should have kept the accounts of the proceeds of sale of the old goods separate

from those of the new, and applied the proceeds of the old
only to the payment of the old debts, it will be at once
seen that this was not only at war with the very plan con-
templated by these very creditors, but was altogether im-
practicable. From the very nature of the business carried
on, the new goods being purchased to keep up lines of
goods, and the sales made by the receiver to customers em-
bracing, necessarily, lots made up of new and old, and gen-
erally embracing a number of articles, as small too as
matches, it was simply impossible, and known to every one
in the business to be impossible, to separate the sales of
the new from the old. The very object of the continued
purchases was to keep the business going as a unit to en-
able the receiver to get rid of the old ; it was therefore
never contemplated to keep new goods separate from the
old in disposing of them to purchasers.

Now if the auditor's accounts were all before the Court,
it would be found that while all the appellants were cred-
itors at the time of the appointment of the receiver, all of
them, except the Taunton Co., *have been fully paid* their 40
per cent. claims. The secret is thus revealed of their effort
now to *mulct the receiver with the payments they accepted
from him! !* It will be observed, that *all* the appellants
are creditors who were such of Lord & Co. when the re-
ceiver was appointed. These creditors who became such
for the first time after the receiver was appointed are not
appealing, the money in hand being sufficient to pay them.

But independent of all the foregoing, the reports made
to the Court by the receiver, and the orders of the Court
passed thereon, show conclusively that the receiver was di-
rected by the Court to continue *the business theretofore con-
ducted* by selling in the usual course of business, and buy-
ing such new goods as were needed by the demands of the
business ; and that this was directed to be done *until the
further order of the Court. Beach on Receivers*, 304, 284,
273, 268, 269 ; 54 *Md.* 28. Now, these creditors were
bound to take notice of all the orders of the Court passed

in reference to the business thus carried on ; and this business was thus, in large part, directed by the Court to be continued after July, 1893, because of the action of these very creditors, who insisted on the receiver paying them their notes, which they agreed to take.    These creditors, though constantly dealing in the way of selling new goods and getting paid for old claims, never made any objection to the continuance of the business, and they are estopped from making it now.

*Alfred S. Niles* (with whom was *Oscar Wolff* on the brief), for the Weaver Bardall Manufacturing Company and other creditors who were not the creditors of the insolvent firm.

McSHERRY, C. J., delivered the opinion of the Court.

On the second of June, eighteen hundred and ninety-three, Charles W. Lord filed a bill of complaint in Circuit Court No. 2, of Baltimore City, against his copartner, Thomas F. Sprigg, alleging that the firm composed of the plaintiff and defendant was hopelessly insolvent, unable to pay its debts or to continue its business longer without wronging its creditors and seriously diminishing its assets ; and praying that the partnership of " C. W. Lord and Company " might be dissolved and that a receiver might be appointed to take charge and possession of its assets.    On the same day an order was passed appointing Winfield J. Taylor receiver. The following day the receiver obtained from the Court an order authorizing and directing him to continue the business of the firm till the further order of the Court, though this order did not empower him to buy any other new goods than were necessary to complete the manufacture of the raw materials on hand and to enable him to sell the old stock. On November the twenty-eighth of the same year the receiver made report that he had continued the business by selling in the usual course of business and by buying such new goods as were needed by the demands of the trade. Upon this petition an order bearing the same date was passed

ratifying what the receiver had done and directing him to continue the business of C. W. Lord and Company.   In the meantime a meeting of the creditors of the firm had been held and it was agreed by most of them to accept forty cents on the dollar in settlement of their claims, the promissory notes of the firm at three, six, nine, and twelve months to be given, and the assets, or the money arising from the sale thereof, to remain in the hands of the receiver as security for the payment of the composition notes.   The receiver, in continuing the business, purchased large amounts of materials and incurred a heavy indebtedness.   Some of these goods and materials were bought by him from creditors of the firm and some from other persons who were not such creditors.   Out of the proceeds of the sale of the old stock as augmented by the new purchases made from time to time by the receiver he paid, with the exception of eight thousand and eighty-seven dollars and eighty-nine cents, the forty per cent. composition notes above alluded to.   On the fifth of June, or three days after the appointment of the receiver, certain creditors of C. W. Lord and Company sued out attachments which were levied on the firm's assets and also on the individual property of C. W. Lord.   These attaching creditors were restrained by injunction from interfering with the firm's assets; but the receiver believing that if they were permitted to pursue and to sell the individual property of C. W. Lord, as they threatened to do, a ruinous sacrifice would ensue, compromised with them for sums in excess of the forty per cent. accepted by the other creditors; and this proceeding, upon being reported to the Court, was ratified by it on December the third, eighteen hundred and ninety-four.   Some of the individual property of C. W. Lord was held as collateral by the firm's creditors and the receiver was empowered to pay off these debts and liberate the collaterals for the benefit of the firm's creditors.

After the business had been carried on by the receiver up to January the fourteenth, eighteen hundred and ninety-five, it was ascertained that it was falling behind and that

the receiver owed for the purchase of new goods and ma-
terials a considerable sum ; and thereupon, at the instance
of some of the creditors and without resistance by Winfield
J. Taylor, a co-receiver was appointed, the business was
ordered to be closed out and the assets were directed to be
distributed.   Auditor's reports and accounts were subse-
quently made and stated wherein commissions were allowed
the receiver, and wherein he was credited with the total sums
paid by him in settlement of the attachment suits.   Excep-
tions, which are not be found in the record, were filed to
these accounts.   The account showing the receipts and dis-
bursements of the joint receivers was ratified and confirmed,
whilst the exceptions to the other accounts were sustained,
and on October the thirty-first, eighteen hundred and ninety-
five, another order was passed referring the case back to
the auditor with directions to make distribution of the funds
in the receiver's hands in the following manner: First. "To
the payment in full of those creditors of W. J. Taylor, sole
receiver, who were not, as creditors of C. W. Lord and Com-
pany at the time of their failure, parties to the agreement of
compromise under which said Taylor carried on the busi-
ness of C. W. Lord and Company as receiver.   Second. To
the payment of any balance yet remaining due the original
creditors of C. W. Lord and Company who agreed to accept,
and have not yet received in full, the compromise settlement
of forty per cent. of their claims, so as to give such creditors
their full forty per cent. compromise.   Such payments to be
equalized as far as possible, if not paid in full.   Third. To
the payment of those creditors of W. J. Taylor, sole receiver,
who were also creditors of C. W. Lord and Company, and
parties to the agreement of compromise, under which said
Taylor, as receiver, carried on the business of said firm."
In this same order the allowance of commissions to Mr.
Taylor and the allowance of a credit for the payments made
by him in excess of forty per cent. upon the compromise of
the attachment cases were expressly reserved for future con-
sideration and were not passed upon at all.   From this order

the appellants, all of whom were original creditors of C. W.
Lord and Company as well as of the receiver, Taylor, and
all of whom, except the Taunton Wire Nail Company, have
received their forty per cent. in full, have appealed.   Their
contention is that the funds in the hands of the receivers,
including the amount which Taylor claims to retain as com-
missions augmented by the sums paid by him in excess of
forty per cent. in compromising the attachment proceedings,
should be distributed ; first, to the payment of all the cred-
itors of the receivership without distinction ; and secondly,
to the payment of the forty per cent. compromise notes still
unsettled.

With the question as to whether Mr. Taylor should be
allowed any commissions or not because of his alleged mis-
management of the business : and with the other question
as to whether he shall be credited with the sums which he
paid in excess of forty per cent. to the attaching creditors,
we have nothing to do on this appeal.   The Court below
having expressly and in terms reserved these questions for
future action, and having made no disposition of them what-
ever, nothing has been decided or determined in respect to
them from which an appeal could be taken.   These ques-
tions are, therefore, not before us, and as they are not before
us we are without authority to express an opinion upon
them.   We proceed, then, to the consideration of the only
matter which the record properly brings up, and that relates
simply to a controversy between two classes of the receiver-
ship's creditors.

Now, we have said that there are altogether three classes
of creditors.   First, those who were creditors of C. W.
Lord and Company when the receiver was appointed, and
who subsequently accepted the forty per cent. composition
and by whose sanction the receiver continued the business ;
second, those who so being creditors of the firm, afterwards
sold goods and materials to the receiver, and became, as to
such goods and materials, his creditors ; and third, those
who not being creditors of C. W. Lord and Company be-

came creditors of the receiver by selling to him after his appointment. The fund for distribution is sufficient to pay the last-named class in full, with a slight surplus over. The order appealed from directs and the audit stated in accordance therewith, allows the payment of these creditors in full, and to this allowance some of the creditors of the second class have objected, and upon their exceptions being overruled, have brought up this appeal.

We discover no error in this allowance. There is no question involved as to the priority of the receiver's certificates. This Court has recently held that a receiver of a private corporation has no authority, even under an order of Court, to create liens upon the property placed in his care by the issual of certificates which will take precedence over subsisting incumbrances, *Hooper* v. *Central Trust Co.*, 81 Md. 559, and the same principle equally applies to a receiver of a firm or copartnership. The sole inquiry is as to the order in which, under the circumstances of this case, the fund in Court shall be distributed between these different classes of creditors. It was obviously not the design and purpose of the orders of June the third and November the twenty-eighth, eighteen hundred and ninety-three, to empower the receiver to purchase goods on credit and then to sell them again, and out of the proceeds of sale to pay the creditors of the firm in settlement of their composition notes, to the exclusion or even to the prejudice of the persons who, not being creditors of the firm, had become creditors of the receiver on account of these very purchases. Such a mode of dealing would have been simply applying the money of one set of individuals to the payment of the debts due to another set, though the latter had no claim whatever upon the former. The business was continued by the receiver with the sanction of the firm's creditors and solely for their benefit. They had no claim upon the goods bought by the receiver, nor upon the proceeds of the sale thereof, except to the extent that they were the vendors of those goods. The receiver's power was limited strictly to the purchase of

such new materials as would enable him to convert into cash the assets he took into his possession at the time of his appointment.   The proceeds derived by him from the sales of goods which he bought belonged, less the profits, to the persons from whom he purchased the goods.   The profits arising from such sales and the money obtained from the sale of the old stock belonged to the firm's creditors—those who were creditors when the receivership was created.   It was manifestly, then, the duty of the receiver to pay to the creditors from whom he bought goods the amounts he contracted to pay, and if he neglected to do this and applied the money to the settlement of the composition notes and now has in hand funds with which to pay the creditors who are solely the receiver's creditors, the Court below was right in directing payments to be made to that class of creditors, and the composition creditors for whom the receiver was acting and to whom he paid money which ought to have been paid, not in settlement of the composition notes, but in satisfaction of the debts which he, as receiver, contracted, have no just ground to complain, if, in consequence of their wrongful receipt of money on their notes, they are required to wait for the payment of their claims against the receiver until the receiver's other creditors, not so situated, are paid in full.   These composition creditors were the persons for whom the receiver was acting in continuing the business, and though all of them (except one) who are now appellants, accepted the forty per cent. paid out of the sales of the commingled old and new goods, they ask not only that as to the new goods sold by them they shall be put upon an equality with the class of creditors who are only creditors of the receiver, but that as the receiver ought to have first paid for all goods bought by him before paying out of the proceeds of their sale any of the forty per cent. composition notes, he should be charged personally with, and made to account for, the very sums received by these objecting creditors and others similarly situated, notwithstanding their allegation that these identical sums thus paid

to them were wrongfully paid, and therefore improperly received. They accepted these payments knowing the facts, and they insist that, as the receiver wrongfully paid them their forty per cent. compositions, and as they wrongfully received and still wrongfully retain these sums, he must be made to pay these same individuals out of his own pocket the debts contracted with them by him for their benefit. There is no principle of equity that we are aware of which will warrant such a contention. Upon the very theory on which these appellants allege that the receiver's payment of the forty per cent. to them was wrongful, payments in full to the other creditors were right, because as respects new goods bought by the receiver nothing but the profits derived from their sale belonged to the firm's creditors, and consequently sums of money which ought to have been paid for the new goods ought not to have been paid to or received by the appellants in settlements or partial settlement of their composition notes. If the firm's creditors, who are also the receiver's creditors, accepted and retain payments wrongfully made to them by the receiver, they cannot be permitted to hold on to that which they have thus received, it being that which they ought not to have received at all, and yet to stand upon terms of equality with those who confessedly participated in no wrongful act whatever. He who seeks equity must do equity. This maxim expresses the governing principle that every action of a Court of Equity, in determining rights and awarding remedies, must be in accordance with conscience and good faith. 1 *Pom. Eq.* sec. 385.

In our opinion the Court below was right in postponing these appellant creditors and in giving to the composition creditors yet unpaid a preference after the payment in full of those persons who were creditors only of the receiver.

Finding no error in the order appealed from it will be affirmed with costs.

*Order affirmed with costs above and*
*below.*

(Decided June 16th, 1896).