Gale TODD, Edythe Todd and Gary Todd, Plaintiffs and Appellants,

v.

Kenneth WINKELMAN and Erma Winkelman, Defendants and Appellees.

Nos. 13378, 13401.

Supreme Court of South Dakota.

Argued Oct. 22, 1981.

Decided June 9, 1982.

Jerry C. Rachetto of Driscoll, Mattson, Rachetto & Christensen, Deadwood, for plaintiffs and appellants.

John J. Delaney of Amundson & Fuller, Lead, for defendants and appellees.

MORGAN, Justice.

This is an appeal from several orders and a final judgment entered in a foreclosure action adjudging defendants Kenneth and Erma Winkelman (buyers) free from liability for a deficiency concerning their default on a contract for sale of a business consisting of the building, equipment, fixtures, and licenses comprising the Dakota Territory Saloon (hereinafter referred to collectively as the saloon) in Deadwood, South Dakota. Buyers also appeal by notice of review. The briefs raise many issues which we deal with seratium. We affirm in part, reverse in part, and remand.

Sometime in the fall of 1978, buyers approached Gale, Edythe and Gary Todd (sellers), owners and operators of the saloon, concerning the sale of this business. On November 3, 1978, after extensive negotiations, an agreement was reached which was reduced to a written agreement by sellers' attorney. The parties fixed a total purchase price of $265,000 for the real property, fixtures, equipment and licenses. Although sellers had demanded twenty-nine percent down payment, they agreed to accept $20,000 and buyers agreed to put up their business, the Prospector Gift Shop, as additional security.

Buyers spoke briefly with an attorney at a social engagement concerning the agreement. During negotiations, they also requested an opportunity to examine the sellers' accounting books, but for various reasons sellers never produced the books. Sellers represented to buyers, who had never been in the bar business, that the business if properly managed would generate sufficient capital to make the quarterly payments in the amount of $10,000.

Subsequently, buyers made additional payments of $45,000 on the contract before going into default. During that time, they neither complained nor objected to the terms of the agreement. In April of 1980, sellers sought foreclosure of their agreement due to buyers' default, seeking first to have their security interest in the Prospector Gift Shop foreclosed. The trial court, however, found that it was the intent of the parties, as expressed in the contract for sale, that the saloon was primary security for the debt and forestalled the foreclosure on the gift shop until foreclosure, execution and sale of the saloon, and determination of a judgment of deficiency. To this end, the trial court entered a judgment of default and ordered that the saloon be list-

ed for sale with a real estate agency, and that a referee be appointed to run the business. Later, after the realtor was unable to produce any buyer, the saloon was ordered sold at public auction. Sellers were the only bidders and purchased the saloon for the sum of $140,000. Sellers then returned to the court to secure a deficiency judgment and foreclosure on the gift shop.

During the time that the referee operated the saloon, he incurred debts of $16,784.09, a portion of which was unpaid bills of buyers. The trial court ordered that this debt was a primary lien against the proceeds from the sale at public auction. The trial court then found that the sellers had misrepresented the capability of the saloon to produce sufficient income to make the contracted-for payments as they became due. Because the sellers were before the court with unclean hands, the court entered judgment determining that no deficiency existed.

█ Sellers appeal from the judgment of January 28, 1981, finding no deficiency, and the order and amended order concerning the appointment and action by the referee. They first argue that the trial court erred in ordering sale of the saloon as primary security. In accordance with SDCL 15–16–2 and 21–47–13, the trial judge entered a judgment for sale of the saloon on October 23, 1980. SDCL 15–26A–3(1) provides that a judgment is appealable as of right. The judgment ordering sale and execution is a final judgment distinct from the judgment of deficiency. *Stewart v. Eaton*, 287 Mich. 466, 283 N.W. 651 (1939) (Wiest dissenting); *Arnold v. Hawley*, 128 Neb. 766, 260 N.W. 284 (1935); *cf. Hollister v. Buchanan*, 11 S.D. 280, 77 N.W. 103 (1898). Sellers did not appeal the judgment ordering sale and execution on the saloon within the time required by statute. For these reasons, we hold that the arguments of sellers concerning the trial court's construction of the contract for sale are not proper-

ly before us.[1] Thus, we examine the issue of whether after sale of the saloon a deficiency existed.

Sellers urge that the trial court erred in concluding that the appellants' hands were unclean in the negotiation and execution of the contract documents and, therefore, were not entitled to a deficiency payable by sale of the additional security set forth in the contract documents. While we agree with the appellants that the trial court erred in basing its conclusion of law on the doctrine of unclean hands, we nevertheless conclude that the result was correct for another reason, the failure of sellers to comply with the provisions of SDCL 21–47–15 through 17.

SDCL 21–47–15 reads as follows:

In any foreclosure of a mortgage upon real estate by action, the mortgagee, his assigns or their legal representatives, may purchase the premises, or any part thereof, at such foreclosure sale, providing he bids fairly and in good faith, and bids the fair and reasonable value thereof.

SDCL 21–47–16 reads as follows:

If the holder of such mortgage is not willing at such sale to bid the full amount of the judgment debt, it shall be the duty of such mortgage holder to establish at the time of the trial by competent proof to the satisfaction of the court, the fair and reasonable value of the mortgaged premises, and the court shall determine the same in its decree; and if the court shall find such fair and reasonable value to be less than the sum due on said mortgage, with costs and expenses of sale, it may by such decree authorize such mortgage holder to bid not less than the fair and reasonable value as thus determined, and if a deficiency remains after the foreclosure sale, such mortgagee, or his assigns, shall be entitled to a general execu-

---

1. The order appointing the referee was likewise appealable as a final order and is not properly before us. *State v. State Bank of Minatare*, 123 Neb. 109, 242 N.W. 278 (1932). Placing a lien on the property for costs incurred by the refer-

ee, however, was not appealable and is properly before us on appeal from judgment of deficiency. *Hornby v. Hornby*, 71 S.D. 418, 25 N.W.2d 237 (1946).

tion for such deficiency only upon application to the court in which the judgment was rendered.

SDCL 21–47–17 reads as follows:

Except as provided by § 21–47–16, the foreclosure by action of a mortgage upon real estate shall operate as a complete extinguishment, satisfaction and payment of the debt secured by such mortgage.

In *Perpetual National Life Insurance Co. v. Brown*, 85 S.D. 330, 334, 182 N.W.2d 216, 218 (1971), we held the following procedures mandatory as under the above statutes.

1. The mortgage holder must inform the court of his intention to claim a deficiency;

2. The court must determine the fair and reasonable value of the mortgaged premises;

3. The mortgage holder may bid not less than the fair and reasonable value of the mortgaged premises as determined by the court;

4. The allowable deficiency after a foreclosure sale cannot exceed the difference between the judgment debt and the fair and reasonable value of the mortgaged premises regardless of who bids in the property at the foreclosure sale or regardless of the actual price at sale.

In *Perpetual National*, the mortgage holder failed to establish the fair and reasonable value of the mortgaged property or to comply with SDCL 21–47–16 by other means. *Id.*, at 217. This court held that in such cases, the "foreclosure action operated as a complete extinguishment, satisfaction and payment of the debt secured by such mortgage." *Id.*, at 219.

▮ Clearly, the mortgage holder is required to make his record at the hearing on the foreclosure so that the court can make its determination of fair value in the decree of foreclosure. Equally clear, the sellers failed to accomplish this here. *Perpetual National* applied the statutory requirement

although other lien claimants were joined or allowed to intervene. In this instance, the strict foreclosure proceedings operated against both real and personal property. Because there was never any attempt to segregate or apportion the indebtedness in any manner,[2] we cannot do so now. Consequently, we hold that the statutory mandates are applicable to the entire contractual indebtedness. We also hold that because sellers did not comply with the appropriate statute, they are precluded from seeking a deficiency for the difference in purchase price at foreclosure sale and the mortgage debt.

Finally, we consider the trial court's apportionment of operating expenses to create a primary lien for payment of receivership expenses out of the sale proceeds. Sellers urge that the trial court erred in creating a lien superior to their own when the trial court ordered the receiver to pay expenses that accrued while buyers operated the saloon. They do not contest that the receiver's actions were necessary to preserve the collateral, nor that they are chargeable with expenses accruing during the receivership.

▮ A receiver is an officer of the court, appointed to preserve the collateral. As such, the court itself is looked upon for payment of operating expenses accruing during the receivership. *Knickerbocker v. McKindley Coal & Mining Co.*, 172 Ill. 535, 50 N.E. 330 (1898), cited with approval in *Hornby v. Hornby*, 71 S.D. 418, 25 N.W.2d 237 (1946). When the net income is insufficient to pay these expenses, the resulting debt is payable out of the sale proceeds or the property of the insolvent debtor. In the instant case, the receiver paid bills which had become delinquent while buyers operated the saloon. In effect, it relieved buyers of their contracted-for obligation to the respective suppliers. *Diamond Match Co. v. Taylor*, 83 Md. 394, 34 A. 1015 (1896), cited with approval in *Hornby v. Hornby, supra.* These were not expenses of the receivership, not the obligation of the court,

---

2. In accordance with SDCL 57A–9–501(4), sellers elected to proceed under SDCL 21–47–15 et seq.

and, certainly, not payable out of the sale proceeds.

■ By notice of review, buyers argue that they were entitled to damages on their allegation of fraud in their counterclaim. The trial court found that, at best, sellers sought foreclosure with "unclean hands" and for this reason found that no deficiency was owing, but did not allow damages for fraud. The record unequivocally demonstrates that buyers approached sellers with an offer to purchase the saloon when the property was not for sale. Both parties were business people, albeit, in different businesses. Moreover, sellers' statements that the saloon would generate sufficient income were, at best, puffing. The trial court properly denied buyers' damages on their claim of fraud.

We remand for determination of the receivership expenses which accrued before appointment of the receiver and entry of a judgment against the buyers in this amount, and affirm as to all other issues raised on appeal.

All the Justices concur.