MINERS AND MERCHANTS BANK, A
Banking Corporation, Plaintiff
and Appellee,

v.

BRADEN FORESTRY SERVICES, INC.,
Millard M. Braden, Edna Mae Braden,
Jon P. Hallinan, and Glen L. Westberg,
Defendants,

and

M.H. Braden, a/k/a Milford H. Braden,
and Margaret M. Braden, Defendants
and Appellants.

No. 14531.

Supreme Court of South Dakota.

Sept. 6, 1985.

Robert A. Amundson of Amundson &
Fuller, Lead, for plaintiff and appellee.

William H. Coacher, Sturgis, for defendants and appellants.

WOLLMAN, Justice.

This is an appeal from an order approving sale of M.H. and Margaret Braden's cabin property, pledged as collateral for a promissory note executed and delivered by Braden Forestry Services, Inc. to Miners and Merchants Bank (Bank). We affirm.

The facts here are not in dispute.

On January 8, 1981, Braden Forestry Services executed and delivered to Bank a note in the principal sum of $210,000.00. The note was secured by collateral designated in a security agreement executed by Braden Forestry on the same day. Millard M. Braden and Edna Mae Braden, president and secretary of Braden Forestry, personally guaranteed the note. Their guarantee was secured by mortgages on two separate parcels of property.

As further security on the note, M.H. and Margaret M. Braden (the Bradens), parents of Millard M. Braden, executed a guaranty, secured by a mortgage on their

home located in Sturgis, South Dakota, and a security interest in their cabin located in the Black Hills.

Braden Forestry defaulted on the note. On June 9, 1982, Bank brought an action to recover on the note, naming, among others, Braden Forestry Services, Millard M. Braden, Edna M. Braden, M.H. Braden, and Margaret Braden as defendants.

On December 17, 1982, Bank moved for summary judgment. At the January 4, 1982, hearing on the motion, all defendants failed to appear either in person or by counsel. On January 11, 1983, summary judgment was entered against all defendants. It was ordered that Bank recover the sum of $226,099.09. It was further ordered that Bank could proceed against all guarantors on the note for satisfaction of the judgment and that the several mortgages given by the various defendants be foreclosed.

On June 8, 1983, Bank's vice president, Joe GrandGeorge, submitted an affidavit to the trial court that stated that the approximate value of the mortgaged properties had been established with the assistance of a real estate appraiser. The approximate fair market value of M.H. and Margaret Braden's home in Sturgis was estimated at approximately $28,000.00; the cabin was valued at between $20,000.00 and $25,-000.00. A copy of the appraisal was attached to the affidavit.

On June 9, 1983, the trial court issued an order stating that the fair market value of the mortgaged properties was less than the total sum due on the judgment. The order further authorized Bank to enter its bid on the mortgaged property at the fair and reasonable value established by the court and that Bank would be entitled to a general execution if a deficiency remained after the sale.

Following appropriate notice, a foreclosure sale was held on the Braden's Sturgis residence on August 23, 1983. Bank submitted a bid of $28,500.00.

On September 30, 1983, following receipt of a private offer to purchase the Braden's cabin, Bank moved the court to approve sale of the cabin and to find the sale commercially reasonable. Bradens resisted the motion.

Bradens' counsel argued that Bank had failed to comply with the statutes governing deficiency judgments, SDCL 21–47–15 through 21–47–17.

SDCL 21–47–15 provides:

In any foreclosure of a mortgage upon real estate by action, the mortgagee, his assigns or their legal representatives, may purchase the premises, or any part thereof, at such foreclosure sale, providing he bids fairly and in good faith, and bids the fair and reasonable value thereof.

SDCL 21–47–16 provides:

If the holder of such mortgage is not willing at such sale to bid the full amount of the judgment debt, it shall be the duty of such mortgage holder to establish at the time of the trial by competent proof to the satisfaction of the court, the fair and reasonable value of the mortgaged premises, and the court shall determine the same in its decree; and if the court shall find such fair and reasonable value to be less than the sum due on said mortgage, with costs and expenses of sale, it may by such decree authorize such mortgage holder to bid not less than the fair and reasonable value as thus determined, and if a deficiency remains after the foreclosure sale, such mortgagee, or his assigns, shall be entitled to a general execution for such deficiency only upon application to the court in which the judgment was rendered.

SDCL 21–47–17 provides:

Except as provided by § 21–47–16, a foreclosure by action of a mortgage upon real estate operates as a complete extinguishment, satisfaction and payment of the debt secured by the mortgage. However, a foreclosure may not be considered to be satisfaction of an assignment of rents agreement under the mortgage.

The trial court overruled Bradens' objections, concluding that the question of compliance with the deficiency judgment statutes was raised prematurely. The court further stated that in the event Bank sought a deficiency judgment, the court would determine whether it had strictly complied with the statutes.

Subsequently, on January 16, 1984, the trial court issued an order approving the sale of Bradens' cabin and finding the sale to be commercially reasonable. It is from this order that Bradens appeal.

On appeal, Bradens argue that Bank failed to comply with that portion of SDCL 21–47–16 which requires the "mortgage holder to establish at the time of trial by competent proof to the satisfaction of the court, the fair and reasonable value of the mortgaged premises, and the court shall determine the same in its decree." Bradens further contend that Bank's post-summary judgment ex parte affidavit concerning the approximate fair market value of the mortgaged properties did not satisfy the requirements of the statute. Bradens argue that when Bank entered a bid on their residence in Sturgis for less than the amount of judgment, the entire debt was extinguished. Accordingly, Bradens would have us hold that Bank is precluded from selling their cabin property in further satisfaction of the debt.

In *Todd v. Winkelman*, 320 N.W.2d 525 (S.D.1982), the mortgagees had foreclosed on the primary security pledged by the mortgagors. Following sale, the mortgagees returned to the court to secure a deficiency judgment. The only issue on appeal was whether a deficiency existed after the sale of the primary security. Because the mortgagee had failed to make a record at the hearing on foreclosure establishing the fair value of the primary security, we held that they were not entitled to a deficiency judgment under SDCL 21–47–16.

In *Perpetual Nat'l Life Ins. Co. v. Brown*, 85 S.D. 330, 182 N.W.2d 216 (1970), the issue whether the mortgagee could obtain a deficiency judgment from the mortgagor on the promissory note was presented to this court only after the mortgaged property had been sold and the assets from that sale applied to the debt. The issue on appeal was whether the mortgagee had properly made a record at trial regarding the fair market value of the mortgaged property so as to be entitled to a deficiency judgment.

Unlike the mortgagee in *Todd*, Bank has yet to exhaust all collateral pledged as security for the guaranty. We do not read *Todd* as precluding Bank from doing just that. Moreover, as we said in *Todd*, "the judgment ordering sale and execution is a final judgment distinct from the judgment of deficiency." *Id.* at 527.

A deficiency judgment is an imposition of personal liability upon a mortgagor for an unpaid balance of a secured obligation after foreclosure of the mortgage has failed to yield the full amount of the underlying debt. Thus, a proceeding for a deficiency judgment is an attempt to recover something more than and distinct from the security provided by the debtor. *In re Pittsburgh-Duquesne Development Co.*, 482 F.2d 243, 246 (3rd Cir.1973).

We observed in *Perpetual Nat'l Life Ins. Co. v. Brown, supra,* that the legislative purpose in enacting the deficiency judgment statutes was to prevent unjust enrichment and gain by the holders of real estate mortgages. 85 S.D. at 334, 182 N.W.2d at 218. *See also American Federal Savings & Loan Ass'n v. Kass*, 320 N.W.2d 800 (S.D.1982). In short, the deficiency judgment statutes are designed to prevent a mortgage holder from obtaining a deficiency judgment without regard to the fair value of the mortgaged property.

Here, the trial court has ordered the sale of the collateral; however, Bank has not yet made application for a deficiency judgment. As we construe SDCL 21–47–16, such application for deficiency judgment cannot be made until after Bank has foreclosed on all pledged collateral.

The policy underlying the enactment of the deficiency judgment statutes is not implicated until such time as the mort-

gaged property has been sold and an application for a deficiency judgment has been made to the court. Therefore, the Bradens' contention that Bank has failed to comply with the deficiency judgment statutes has been prematurely presented to this court.

Pursuant to the trial court's unappealed-from summary judgment ordering that all collateral be sold and the assets from those sales be applied in satisfaction of the entire debt, Bank must be permitted to sell the cabin. Whether Bank is entitled to a deficiency judgment is a matter to be presented to the trial court following the sale.

The order appealed from is affirmed.

FOSHEIM, C.J., MORGAN, J., and WUEST, Acting J., concur.

HENDERSON, J., concurs in part and dissents in part.

HENDERSON, Justice (concurring in part, dissenting in part).

It is true, as the majority opinion has held, that no precise deficiency judgment in dollars has been adjudged. Appellants cannot claim error, therefore, on this exact point of law.*

However, a foreclosure action was instituted and certain orders were entered by the trial court from which, appellants declare, there arises grievous civil error. I agree. As foreclosures evolve and advance in our courts, reminiscent of the dirty thirties, we, in the judiciary, must be ever so vigilant in insuring that lending institutions follow the required foreclosure procedures.

Appellants place themselves in peril, procedurally and substantively, by suffering a summary judgment to be taken against them. When I say appellants, I am referring to Milford and Margaret Braden, who are the father and mother of Millard M. Braden. This is a case wherein a mother and father pledged their modest home and a cabin in the Black Hills of South Dakota to help out their son in his business and will apparently lose all to a lending institution. Under my rationale, this case would be remanded to the lower court for the circuit court to go through the proper procedures in a foreclosure action; or, alternatively, if my Brothers on this Court would not so agree on a remand, that the trial court be directed to enter a complete extinguishment of the debt (by guaranty) as relates to the parents of the principal debtor. I sense that the circuit court judge himself had trepidations about the procedures followed, for he indicated that he would later determine, at the deficiency hearing, if he had strictly complied with the statutes.

An answer was filed on behalf of the aforesaid parents. Yet, no counsel resisted the summary judgment motion and the parents failed to appear, at the appointed time, either in person or by counsel at the summary judgment hearing. Their son's lawyer did not come forward and represent them. After summary judgment was taken against these parents, they had an uphill battle to wage; and when it became apparent to them that the day of reckoning was at hand, i.e., that the pledged property was to be sold, they began to legally joust for their creditors' rights. Appellants really did not sleep on the summary judgment proceedings for an answer had originally been interposed on their behalf. Said answer was interposed by an attorney employed by the parents' son. If one anchors himself in thought to the legal position that the parents slept on their rights, still they had a right to come forward and to object to the procedures employed by appellee Bank pertaining to the implementation of the summary judgment. Put another way, the parents had the right to insist that proper foreclosure methods were used in taking their home and cabin away from

---

* Bank's brief expressly reveals that "no deficiency judgment was sought" and "[t]he Bank is only proceeding pursuant to the U.C.C. sections to exhaust the security pledged, and has made no application for any deficiency judgment." Thus, I cannot agree that the Bank may now proceed below to secure a deficiency judgment, as suggested by the last substantive sentence of the majority opinion.

them. As I believe that the procedures were improper, I dissent to that portion of the majority opinion which approves of the circuit court's determinations in this respect. And in view of the footnote I have set forth herein, I find it inconceivable that a deficiency judgment can now be entered against the parents at a hearing subsequent to this appeal in the Supreme Court.

Where did the trial court get all of its facts? There was no testimony taken at the hearing. Why were extensive findings of fact and conclusions of law entered on a summary judgment bearing the date of January 11, 1983? These are totally unnecessary and improper under SDCL 15-6-56(c). Some five months after the entry of judgment and notice of entry of judgment being served upon appellants, the trial court, ex partéd the appellants by receiving an affidavit of an appraiser and securing an additional Order. This Order established that the market value of the mortgaged home of the appellants was less than the amount of judgment. The law requires that the market value of the home be established by its fair and reasonable value. SDCL 21-47-16. Dissatisfied with this summary judgment procedure which was conceptually flawed, appellants filed a motion to vacate the judgment and also secured an Order of the court dated August 5, 1983, directing the appellee to foreclose its mortgage by action. It appeared that appellants would get relief from the ex parte proceeding and the faulty summary judgment procedure. Their relief was short lived. For, on August 23, 1983, the trial court dismissed appellants' motion to vacate the judgment and also vacated its previous Order requiring appellee to foreclose the mortgage by action. Appellee, in effect, secured an entire foreclosure in a summary judgment action with detailed findings of fact and conclusions of law. Furthermore, no amended summary judgment was ever filed. The medicine was all made and appellants were procedurally punished because they first fell in default. No amended summary judgment was ever entered after the ex parte application which established that the market value of the

property (their home) would be less than the mortgage. As regards my latter statement, there exists no such legal animal in foreclosure proceedings and it cannot be birthed from nine full typewritten pages of findings of fact and conclusions of law entered on a motion for summary judgment. Again, there is no such procedural animal existing under our state statute. *Wilson v. Great Northern Ry. Co.*, 83 S.D. 207, 157 N.W.2d 19 (1968).

Having never established the fair and reasonable value of the home of the appellants, the trial court adjudicated in the Order dated June 9, 1983, that appellants would be responsible for *any* deficiency and that a general execution would lie for *any* deficiency. Appellants were thus locked into a monetary exposure in the future based upon illegal procedures and contrary to our holding in *Todd v. Winkelman*, 320 N.W.2d 525 (S.D.1982). The majority opinion, in its sixth paragraph, fails to point out that the trial court had early ordered a deficiency (although not in an exact dollar amount as I pointed out in my opening paragraph). The cabin sale proceedings (sold at private sale) should not be affirmed for the reason that the foreclosure proceedings on the home were flawed. The two are inextricably interwoven as security. Without establishing value, how can it be determined if the mortgagee bids fairly and in good faith? *Perpetual Nat'l Life Ins. Co. v. Brown*, 85 S.D. 330, 182 N.W.2d 216 (1970).

Lending and financial institutions must not circumvent the law in obtaining or in attempting to obtain deficiency judgments; without regard to the establishment of the value of the mortgaged property in foreclosure actions, you have a runaway horse on your hands.