SINCLAIR MARKETING, INC., a
Delaware Corporation, Plaintiff
and Appellee,

v.

Robert B. MARX, Defendant
and Appellant,
and

Janelle Marx; First National Bank of
Aberdeen, Britton Branch; and
Frank L. Farrar, Defendants.

SINCLAIR MARKETING, INC., a
Delaware Corporation, Plaintiff
and Appellee,

v.

Robert B. MARX, Defendant
and Appellant,
and

Janelle Marx and Wismer Lumber
Yard, Inc., Defendants.

SINCLAIR MARKETING, INC., a
Delaware Corporation, Plaintiff
and Appellee,

v.

SUTHER OIL COMPANY, a South Dakota Corporation; Benson–Quinn Company, a Minnesota Corporation, United States of America; and Taylor Oil Company, a South Dakota Corporation, Defendants.

SINCLAIR MARKETING, INC., a
Delaware Corporation, Plaintiff
and Appellee,

v.

Robert B. MARX and South Dakota Farmers Oil Company, a South Dakota Corporation, Defendants and Appellants, and

Janelle Marx; Lillian Sasse; Joseph R. Plut; Rita R. Plut; and First National Bank of Watertown, Defendants.

SINCLAIR MARKETING, INC., a
Delaware Corporation, Plaintiff
and Appellee,

v.

Robert B. MARX, Defendant
and Appellant,
and _____.

Janelle Marx; Albert J. Berreth; Administrator of the Estate of Jacob H. Berreth, Deceased; Gary Heggeset; Citizens State Bank of Enderlin, North Dakota; and Marshall County, South Dakota, Defendants.

Nos. 15515, 15761.

Supreme Court of South Dakota.

Argued Jan. 12, 1988.

Reassigned April 12, 1988.

Decided July 20, 1988.

Rehearing Denied Aug. 25, 1988.

lienholder) to bid the fair market value of the mortgaged property at the foreclosure sale.

## Facts

Even though the factual and procedural scenario is somewhat detailed and complicated, it need not be totally recited here because of the limited issues addressed in this decision.

Robert B. Marx (Marx) is the owner and sole shareholder of South Dakota Farmers Oil Company of Britton, South Dakota (Company). Company entered into a distributorship contract with Sinclair Marketing, Inc. (Sinclair) in 1980. Marx personally guaranteed payment of Company's indebtedness to Sinclair.

In 1981, Sinclair discontinued delivery of oil products to Company because of unpaid accounts. Marx made a substantial payment on the debt owed and executed a promissory note supported by ten real estate mortgages as part of an agreement whereby Sinclair agreed to forbear enforcing Marx' personal guarantee and to resume financing oil products. At that time, Marx was indebted to Sinclair for over $181,000. Further, at that time the property was subject to two previous mortgages (one mortgage in favor of the First National Bank of Aberdeen, Britton Branch, in the amount of $20,000 and the other in favor of Frank L. Farrar in the amount of $708,500). Although the record is not clear as to the value of the property in 1981, its total fair and reasonable value at the time of trial, in September, 1985, was $126,000. Later, Company again defaulted on payment and, on February 22, 1985, Sinclair initiated foreclosure proceedings against five of the ten mortgages.[*] Marx filed an answer and counterclaim. The trial court granted judgment for Sinclair and dismissed Marx' counterclaim.

Daniel R. Moen of McNeary & Moen, and Rory P. King of Siegel, Barnett & Schutz, Aberdeen, for plaintiff and appellee.

Danny R. Smeins, Britton, for defendants and appellants.

MILLER, Justice (on reassignment).

This is an appeal from an amended judgment of foreclosure and deficiency. We reverse, holding that the trial court did not properly require the mortgagee (a junior

---

[*] Sinclair later initiated foreclosure proceedings against the remaining five mortgaged properties.

The real estate was foreclosed and sold at a sheriff's sale on February 12, 1986. Sinclair was the purchaser. Sinclair applied for a deficiency judgment on March 17, 1986. Marx objected and Sinclair's application was denied on the ground that Sinclair had failed to bid the "fair and reasonable value" of the mortgaged premises as required by SDCL 21–47–16.

Sinclair filed motions to vacate the court's order (which denied the application for a deficiency judgment), to vacate the judicial sales of the foreclosed property, and to amend the judgment. Sinclair asserted that the original judgment had omitted the fair and reasonable value of the interests upon which Sinclair was foreclosing. The motions were granted. The amended judgment reflected the fair and reasonable value of Marx' *net equity* in the property, rather than the fair market value of such encumbered property. The trial court held that Sinclair could foreclose upon only that which had been mortgaged to Sinclair (Marx' net equity).

A second judicial sale was held and again Sinclair was the purchaser. Sinclair again applied for a deficiency judgment and the trial court found in Sinclair's favor, granting deficiency judgment in the amount of $289,250, plus prejudgment interest.

To summarize, the following is an itemization of the salient tracts of property, together with their full, reasonable, and fair value, the net equity of Marx, and the sales price at the second auction:

| Tract | Fair & Reasonable Value | Marx' Net Equity | Sales Price at Second Auction |
|---|---|---|---|
| Tract 1 | $ 2,500.00 | $ 0 | $ 10.00 |
| Tract 2 | 25,000.00 | 25,000.00 | 25,010.00 |
| Tract 3 | 3,500.00 | 0 | 10.00 |
| Tract 4 | 75,000.00 | 0 | 10.00 |
| Tract 5 | 20,000.00 | 10,284.00 | 10,295.00 |

## ISSUE PRESENTED

UNDER OUR DEFICIENCY JUDGMENT STATUTES, MUST A JUNIOR LIENHOLDER BID THE FULL FAIR AND REASONABLE VALUE OF THE PROPERTY AT A FORECLOSURE SALE IN ORDER TO BE ENTITLED TO A DEFICIENCY JUDGMENT? We hold that they must.

## DECISION

This decision requires an analysis and interpretation of our deficiency judgment statutes, SDCL 21–47–15 and –16. Both statutes were adopted by Chapter 146 of the 1939 Session Laws and read as follows:

SDCL 21–47–15 provides:

In any foreclosure of a mortgage upon real estate by action, the mortgagee, his assigns or their legal representatives, may purchase *the premises*, or any part thereof, at such foreclosure sale, providing he bids fairly and in good faith, and bids the *fair and reasonable value thereof.* (Emphasis added.)

SDCL 21–47–16 reads:

If the holder of such mortgage is not willing at such sale to bid the full amount of the judgment debt, it shall be the *duty of such mortgage holder* to establish at the time of the trial by competent proof to the satisfaction of the court, *the fair and reasonable value of the mortgaged premises*, and the court shall determine the same in its decree; and if the court shall find such fair and reasonable value to be less than the sum due on said mortgage, with costs and expenses of sale, it may by such decree authorize such mortgage holder to bid not less than the fair and reasonable value as thus determined, and if a deficiency remains after the foreclosure sale, such mortgagee, or his assigns, shall be entitled to a general execution for such deficiency only upon application to the court in which the judgment was rendered. (Emphasis added.)

Sinclair argues that the term "mortgaged premises" is not the specific real property covered by the mortgage, but rather the mortgagor's net equity in said property. It cites no authority for that position. In fairness to Sinclair, however, we, too, have been unable to find any au-

thority which defines "mortgaged premises" in the context used in these cases.

It is the settled law of statutory construction that words are to be understood in their ordinary sense and are to be given their plain meaning and intent. *See* SDCL 2–14–1 and the many annotations thereunder.

Webster's Third New International Dictionary (Unabridged) defines "premises" as:

3(a) *property* that is conveyed by bequest or deeds; (b) a *specified piece or tract* of land with the structures on it; (emphasis added)

It is important to recognize the purpose of deficiency judgment statutes. In *Miners & Merchants Bank v. Braden Forestry,* 374 N.W.2d 123, 125 (S.D.1985), we held that these statutes "are designed to prevent a mortgage holder from obtaining a deficiency judgment without regard to the fair value of the *mortgaged property.*" (Emphasis added.) *See also Wolken v. Bunn,* 422 N.W.2d 417 (S.D.1988); *Federal Land Bank v. Carlson,* 411 N.W.2d 415 (S.D.1987) *aff'd on reh'g* 422 N.W.2d 99 (S.D.1988).

Justice Henderson in his special writing in *Miners & Merchants Bank,* 374 N.W.2d at 127, emphasized that:

Lending and financial institutions must not circumvent the law in obtaining or in attempting to obtain deficiency judgments; without regard to the establishment of the value of the mortgaged property in foreclosure actions, you have a runaway horse on your hands.

Further, in writing for this court in *Todd v. Winkelman,* 320 N.W.2d 525 (S.D. 1982), Justice Morgan reiterated our prior holding in *Perpetual National Life Ins. Co. v. Brown,* 85 S.D. 330, 182 N.W.2d 216 (1971), wherein we set forth *mandatory* procedures to be followed under the deficiency judgment statutes. It is clear from reading the *Todd* and *Perpetual National Life* cases that the statutory terms "mortgaged premises" and "mortgaged property" were therein considered as synonymous. So that there will be no doubt in the future, we now specifically so hold.

Therefore, following the specific language of the statutes, any mortgage holder seeking a foreclosure *and* deficiency judgment has the obligation to establish the fair and reasonable value of the mortgaged property and the court must make such a determination in its decree. *Federal Land Bank, supra.* The mortgage holder then, in order to obtain a deficiency judgment, must bid the fair and reasonable value of the property.

We recognize that the practical effect of this holding is to require a junior lienholder to jump through the hoops mandated by a foreclosure action and, in effect, pay off part (or in some cases all) of a superior lienholder's debt in order to be entitled to a deficiency judgment. As absurd as it may seem, and although we appreciate that Sinclair's position has some practical merit, we are convinced that they and others similarly situated must look to the legislature, rather than to this court, for relief. There simply is no specific, or even implied, procedure in our statutes which affords junior lienholders the right to bid anything less than the fair market value of the property covered by the mortgage and still be entitled to a deficiency judgment. (Of course, this does not mean that they have to bid the value of the property plus the value of all of the superior encumbrances thereon.)

Our deficiency judgment statutes may be antique and arguably do not contemplate or address modern financing practices. However, by the same token, we must observe that at the time it took the mortgages here Sinclair had to be aware that the value of the property was significantly less than the encumbrances thereon and it therefore entered into the transaction and took the mortgages with its eyes open.

In view of this holding, we need not address the other issues which were raised in this appeal.

Reversed.

MORGAN and HENDERSON, JJ., concur.

WUEST, C.J., and SABERS, J., dissent.

SABERS, Justice (dissenting).

The majority holds that the statutory term "mortgaged premises" is the equivalent of "mortgaged property." Based on this, the majority reasons that SDCL 21–47–15 and 21–47–16 clearly require that a mortgage holder seeking foreclosure and a deficiency judgment bid the fair and reasonable value of the *entire property*. The terms "premises" or "property" may have a plain meaning, as the majority contends, when read alone. However, when the terms are combined with the word "mortgaged" this clarity is blurred.* Although "mortgaged premises" may be construed to mean the unencumbered fee interest, i.e., the value of the entire property, as the majority holds, these words may also mean the value of the mortgagor's interest in the premises, i.e., the value of the property with a reduction for any prior senior encumbrances. The latter interpretation is consistent with both the legislative purpose underlying the deficiency judgment statutes, and the needs and general principles of modern day foreclosure law.

We have previously held that "the legislative purpose in enacting the deficiency judgment statutes was to prevent unjust enrichment and gain by the holders of real estate mortgages." *Miners & Merchants Bank v. Braden Forestry*, 374 N.W.2d 123, 125 (S.D.1985). Reading "mortgaged premises" to mean the value of the mortgagor's interest in the property is consistent with this purpose. The mortgagee cannot be unjustly enriched when required to bid the full amount of the mortgagor's interest in the property before obtaining a deficiency judgment. Thus, the legislative purpose is fulfilled by this interpretation of "mortgaged premises."

Ironically, the majority's reading of "mortgaged premises" permits the mortgagor to enjoy unjust enrichment to the detriment of the mortgagee. Denied a deficiency judgment, Sinclair is left with an unsatisfied debt of over $289,000 and property with significant encumbrances. Further, under the majority's interpretation, a junior lienholder is required to buy out any senior lienholders and acquire full title to the property, where only an encumbered interest was mortgaged, before applying for a deficiency judgment.

Apart from being unduly burdensome and inequitable, the majority's archaic interpretation also contravenes the general rule of foreclosure:

> [T]he general rule is that persons holding prior mortgages or liens are not necessary parties, ... to a suit to foreclose a mortgage where the decree sought is only for a foreclosure of the equity of redemption from the prior lien or mortgage, and not of the entire property; ...

55 Am.Jur.2d *Mortgages* § 571 (1971). "Since a senior mortgagee's interest cannot be affected by an action to foreclose a junior lien, it follows that an attempt to join him as a party to such an action can be defeated through timely objection." Osborne et al., *Real Estate Finance Law* § 7.14 (1979); 3 Powell on Real Property ¶ 463[6]. "A junior mortgagee's security is the property subject to prior encumbrances. That, therefore, is all that can be sold when he forecloses his lien, ..." Osborne at § 7.14.

If the phrase "mortgaged premises" meant unencumbered fee interest, the junior mortgagee would be required to try to force the foreclosure of superior mortgages, which he cannot do or, as Marx argues, forego a deficiency judgment against the mortgagor. Even where superior mortgagees desire foreclosure of their mortgages in the same proceeding, they must join in the foreclosure and bid in at the sale. Even then, their right to foreclose depends upon default existing in their respective mortgages.

---

* The majority refers to Webster's Dictionary definition of the term "premises" in reaching their interpretation. This reference is not helpful in construing SDCL 21–47–16 as it ignores the word "mortgaged," which gives meaning to the term "premises" within the context of the statute. A fair reading of SDCL 21–47–16 requires that "mortgaged premises" be read together. The majority's assertion that the plain meaning of the phrase can be ascertained by reference to the isolated word "premises" is a distortion of the statute.

In the amended judgment the trial court properly fixed the fair and reasonable values of the "mortgaged premises" as the value of Marx's equity in each piece of property. At the second judicial sale, Sinclair bid approximately ten dollars above these amounts. The trial court found Sinclair adhered to the procedures required under the statutes and was entitled to a deficiency judgment. Under South Dakota foreclosure law, Sinclair would take Marx's interests, subject to the redemption period and the prior mortgages. At the end of the redemption period, Sinclair would be vested with the title Marx held, subject to the prior encumbrances.

I believe this interpretation of "the fair and reasonable value of the mortgaged premises" is the only logical reading of SDCL 21–47–16. First, this interpretation ensures that the purpose of the deficiency judgment statutes, preventing unjust enrichment on the part of mortgagees, is fulfilled. Second, it is consistent with the general rule that junior mortgagees who foreclose are powerless, and in fact unable, to effect a foreclosure of a senior mortgagee's lien.

Any other interpretation is not only "absurd" and "antique," as conceded by the majority, but inequitable to present mortgagees, such as Sinclair, and future mortgagors, who will be unable to borrow against partially encumbered property. Finally, the majority opinion says Sinclair, "and others similarly situated, must look to the legislature, rather than to this court for relief." Why? Why hide behind the legislature—ostrich like—when the solution is readily available by a reasonable interpretation of the legislative act.

I would affirm the trial court in all respects and hold that Sinclair was properly granted a deficiency judgment.

For all of the foregoing reasons I respectfully dissent.

I am authorized to state that WUEST, C.J., joins in this dissent.